**Russell A. THU, Plaintiff and Appellee,**

v.

**AMERICAN FAMILY INSURANCE CO., Defendant and Appellant.**

**No. 12524.**

Supreme Court of South Dakota.

Argued Oct. 10, 1979.

Decided May 7, 1980.

John E. Burke, Sioux Falls, for plaintiff and appellee; John N. Gridley, III of Gridley, Nasser & Arneson, Sioux Falls, on the brief.

Edwin E. Evans of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

WOLLMAN, Chief Justice.

Plaintiff sued appellant for money allegedly due him under a health insurance policy, for punitive damages, and for attorney's fees. The trial court directed a verdict in favor of plaintiff on the issue of appellant's liability on the policy and submitted the issue of punitive damages to the jury, which returned a verdict in the amount of $8,000. The trial court thereafter granted plaintiff's application for $1,000 attorney's fees. We reverse and remand.

## FACTS

In September of 1973, plaintiff met with one of appellant's agents to purchase a

* *State v. Kafka*, 264 N.W.2d 702 (S.D.1978).

health insurance policy. Plaintiff filled out an application, indicating, among other things, that he had undergone a hernia operation in January of 1973. On September 19, 1973, appellant issued a policy to plaintiff. The policy consisted of a notice of waiver, benefit schedule, copy of the medical history portion of the application signed by plaintiff, and a waiver that read "This policy does not cover any condition of which the following is the sole, primary, or secondary cause, anything in the policy to the contrary notwithstanding. 'TREATMENT OF RUSSEL FOR HERNIA, ANY COMPLICATION THEREOF.'"

The agent received the original policy from appellant, but the fact of delivery to plaintiff is disputed. The agent testified that it was his customary practice to deliver the original of insurance policies to the policyholders and that to the best of his recollection he had delivered to plaintiff a copy of the insurance policy in question, together with the attached documents. Plaintiff denied ever receiving the policy. He maintained that he was never told of any waiver.

Plaintiff changed the policy three times: in December of 1973, he increased the maximum benefit from $10,000 to $20,000; in October of 1975, he removed his first wife's name from the policy following her death; and upon his remarriage in March of 1976, he added the names of his new wife and her children as beneficiaries.

In November of 1976, plaintiff underwent a double hernia operation. Appellant declined to pay any medical benefits on the basis of the hernia waiver.

The policy contains the following provision:

## GENERAL PROVISIONS

ENTIRE CONTRACT; CHANGES. This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance.

No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions; provided, that any rider, endorsement, or application which modifies, limits, or excludes coverage thereunder must be signed by the insured to be valid.*

■ In directing a verdict in favor of plaintiff on the question of coverage, the trial court construed this provision as requiring plaintiff's signature on the waiver as a prerequisite to the validity of the waiver. We disagree. The provision states that the policy includes the "endorsements and the attached papers." The last sentence of the paragraph speaks in terms of riders, endorsements or applications that modify, limit, or exclude coverage under the policy. Since the policy includes endorsements and attached papers, the requirement of the insured's signature must be construed to apply only to riders, endorsements or applications attached after the original policy has been issued, for otherwise the original policy would consist of less than that which the language of the policy says that it includes. The attachments (here, the hernia waiver) are a part of the policy, not a change in the policy, and it would do violence to the terms of the provision in question to require a signing by an insured contemporaneous with the issuance of a policy. Accordingly, we hold that the absence of plaintiff's signature on the waiver does not ipso facto render the waiver invalid.

■ We conclude that the trial court erred in submitting the issue of punitive damages to the jury. Punitive damages are not recoverable in breach of contract actions. SDCL 21–3–2. Plaintiff's cause of action was nothing more or less than a claim based upon appellant's refusal to pay benefits under the terms of the insurance policy. See *Ochs v. Northwestern Nat. Life Ins. Co.*, 254 N.W.2d 163 (S.D.1977).

---

* The language of the last sentence of this paragraph is now required by SDCL 58–17–14, see 1974 S.D.Sess.L. ch. 315, § 4, and was included in the 1973 policy by virtue of a special provision relating to contracts issued in South Dakota.

Appellant seems to concede that there remain for resolution questions regarding the effect of the alleged nondelivery of the policy to plaintiff, for appellant asks only that we reverse the judgment and remand the case for new trial.

In view of our reversal of the judgment on the grounds set forth above, that portion of the judgment that awards plaintiff attorney's fees must also be reversed.

The judgment is reversed in its entirety, and the case is remanded to the circuit court for new trial.

All the Justices concur.