Monica STONER, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

**No. 85–5054.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1985.

Decided Jan. 6, 1986.

Bradley C. Bonynge, Sioux Falls, S.D., for appellant.

Richard O. Gregerson, Sioux Falls, S.D., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge and AR-NOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Plaintiff Monica Stoner appeals from the district court's[1] grant of summary judgment to the defendant State Farm Mutual Automobile Insurance Company [State Farm] in this diversity action. Stoner brought this action seeking the underinsured motorist benefits under two policies issued by State Farm to her father, and alleging bad faith on State Farm's part in refusing to pay the underinsured motorist benefits under her own policy. On July 1, 1983 the district court granted State Farm's motion for summary judgment on Stoner's claim for punitive damages in connection with her bad faith claim. Later, on February 1, 1985, the court granted State Farm's motion for summary judgment on Stoner's claims under her father's policies, finding that she was not an insured under those policies, and on her bad faith claim. On appeal Stoner asserts that the district court erred in granting State Farm's summary judgment motions, and in denying her own motion for summary judgment and her motion to amend her complaint. We affirm the judgment of the district court in granting State Farm's motions for summary judgment on the contract punitive damages issue and on Stoner's claims under her father's policies, but reverse the court's grant of summary judgment on the bad faith claim insofar as that claim is based on tort. The parties agree that South Dakota law controls.

## I. FACTS

On November 29, 1982 Stoner was a passenger in a car driven by a friend, Deanna Clements, near Sioux Falls, South Dakota, when Clements lost control and the car slid sideways into the path of an eighteen-wheel truck heading in the same direction. Clements was killed, and Stoner was left a quadriplegic. Stoner had enlisted in the Navy in August 1980 for a four-year term. At the time of the accident, Stoner was twenty-one years old and stationed at the Naval Air Station in Dallas, Texas, but was in South Dakota on Thanksgiving leave. In Dallas Stoner lived a few miles off base in a trailer owned by another sailor. The certificate of legal residence that Stoner signed upon entering the Navy, which was still in effect at the time of the accident, listed Sioux Falls as her legal residence.

At the time of the accident Stoner had a policy in effect with State Farm, covering an automobile that she co-owned with her mother, that provided underinsured motorist coverage up to $100,000 and medical payment benefits of $5,000. Her father, Dean Stoner, also had two policies with State Farm covering his own automobiles, each of which had underinsured motorist coverage of $100,000 as well as medical payment benefits of $5,000. In obtaining these policies, Dean Stoner was advised by the State Farm agent that if he took out policies on his own automobiles as well as on automobiles belonging to his daughters Monica and Marsha (who was also in the military service), his daughters would be treated as residents of the family home in Sioux Falls. Mr. Stoner agreed to do so, thereby taking advantage of the lower insurance rates in South Dakota for his daughters' policies. Mr. Stoner's policies list as those insured under the policies "a. The first person named in the declarations; b. his or her spouse; and c. their relatives." The policies then define "relative" as "a *person* related to *you* or *your spouse* by blood, marriage or adoption who lives with *you*. It includes *your* unmarried and unemancipated child away at school" (emphasis in policy).

About two weeks after the accident, Mr. Stoner informed State Farm of the claim.

---

**1.** The Honorable John B. Jones, United States District Judge for the District of South Dakota.

State Farm claims adjustor Lawrence Rottunda investigated the claim, and made a Combined Liability Report on January 24, 1983. In this report Rottunda made the following findings: that the underinsured motorist coverage under Monica Stoner's policy was in effect at the time of the accident; that Deanna Clements, the deceased driver of the car in which Stoner was riding, was insured only in the amount of $15,000, with no other assets in her estate; that Clements' negligence was the primary cause of the accident, that Stoner's medical prognosis was permanent quadriplegia; and that the truck driver, who had a million dollar liability policy with INA Aetna, could have been negligent to some degree for maintaining an excessive speed in adverse road conditions. In a memo dated March 18, 1983, State Farm's legal counsel, Richard Gregerson, stated his opinion that the underinsured motorist coverage under Monica's policy would apply to her claim, notwithstanding the million dollar liability coverage on the truck.[2] Five days later claims adjustor Rottunda, in a "file recap" to his superintendent, requested authority to settle Stoner's claim in the amount of $85,000 (the $100,000 underinsured motorist coverage under her policy less the $15,000 liability coverage on Deanna Clements' policy).

State Farm's regional settlement committee issued a report on April 13, 1983, advising that the insurer pay the $85,000 under Stoner's policy but deny coverage under Mr. Stoner's policies, as the committee voted 3–2 that she was not a resident of her parents' household. Stoner claims that State Farm conditioned payment of the $85,000 on Stoner's and her parents' execution of a release of all claims against the truck driver, the truckline, and the estate of Deanna Clements. In May 1983 Stoner filed this action seeking the underinsured motorist benefits under her own and her father's policies in Count I, and claiming punitive damages in Count II based on State Farm's alleged bad faith in refusing to pay the underinsured motorist benefits

under her own policy. After service of summons and complaint, State Farm admitted liability for the $85,000 in underinsured motorist benefits under Stoner's own policy. On July 1, 1983 the district court granted State Farm's motion for partial summary judgment on Stoner's claims for punitive damages in Count II. Stoner then made several motions to the court, including a motion to amend her complaint, a motion to reverse the partial summary judgment granted to State Farm, a motion for partial summary judgment on her claim for the underinsured motorist benefits under her father's policies, and a motion to compel discovery. State Farm also moved for summary judgment on Stoner's claim. The district court rendered its opinion on February 1, 1985, denying all of Stoner's motions and granting State Farm's motion for summary judgment.

## II. PROPRIETY OF GRANT OF STATE FARM'S SUMMARY JUDGMENT MOTION

### A. Stoner's Claims Under Her Father's Policies

Monica Stoner argues that the district court erred in granting State Farm's motions for summary judgment, because genuine issues of material fact exist for trial. First, Stoner contends that the court should have denied State Farm's motion on her claim for benefits under her father's policies, because those policies are at least susceptible of an interpretation that she is an insured under their terms. The phrase "lives with you" in the policy definition of relative, Stoner asserts, is synonymous with the phrases "resides" and "residents of the same household," both of which have been held by many courts to be ambiguous in meaning. Because the phrase "lives with you" is equally ambiguous, according to Stoner, the court should have followed the prevailing practice among courts that an ambiguity in policy language is interpreted in favor of coverage. As further evidence of the ambiguity of the policy phrase "lives with you," Stoner cites the

---

**2.** The truckline ultimately settled Stoner's claim for $1,100,000.

State Farm regional committee's 3–2 split on the interpretation of the policy.

In addition to her argument that the language "lives with you" is ambiguous, Stoner refers to several cases dealing with insurance coverage of persons in military service, all of which hold that entry into such service does not of itself change a person's domicile or legal residence. Finally, Stoner takes issue with the district court's analysis of the policy. The court determined that the phrase "lives with you" was not intended to mean legal residence, because otherwise no reason would exist to add the statement that "it includes your unmarried and unemancipated child away at school." Stoner argues that the inclusion of unmarried and unemancipated children away at school was not intended as an exception to the "lives with you" language, but rather as an example of how the language could be applied.

■ We agree with the district court and State Farm that no genuine issue of material fact exists as to Stoner's claims under her father's policies. Despite Stoner's contention to the contrary, we find no ambiguity in the phrase "lives with you." The cases to which Stoner cites in her brief all deal with some variation of the terms "residence" or "domicile," both of which have specific legal meanings apart from their ordinary usage. *See* Black's Law Dictionary 435–36, 1176–77 (5th ed. 1979). No contradiction exists, as Stoner would suggest, between the district court's statement, "there is no question that Monica Stoner remained a legal resident of her parents' household," and its ultimate conclusion that she was not living with her parents and thus was not insured under Mr. Stoner's policies. "Legal residence," which is synonymous with "domicile," is that "permanent fixed place of abode which [a] person intends to be his residence and to which he intends to return despite temporary residences elsewhere or despite temporary absences." Black's Law Dictionary 807 (5th ed. 1979). *See also Spurlin v. Siebrasse,* 74 S.D. 150, 152, 49 N.W.2d 604, 605 (S.D.1951); *Appeal of Lawrence*

*County,* 71 S.D. 49, 51, 21 N.W.2d 57, 58 (S.D.1945). We find no error in the district court's reasoning that if the phrase "lives with you" were intended to mean legal residence, the statement that "it includes your unmarried and unemancipated child away at school" was added unnecessarily. Because the phrase "lives with you" is susceptible of only one interpretation, i.e., actually living in fact, those cases holding that an ambiguity in an insurance policy should be construed to provide coverage are not applicable. *See Novak v. State Farm Mutual Automobile Insurance Co.,* 293 N.W.2d 452, 454 (S.D.1980) (court declined to read coverage into insurance policy that was not included by parties in the policy's "clear and unambiguous language"). In sum, the district court properly granted State Farm's motion for summary judgment on Stoner's claims under her father's policies, while denying Stoner's summary judgment motion on the same claims. We therefore affirm the district court's denial of Stoner's motion to amend her complaint insofar as her proposed amendments relate to her claims under her father's policies. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ("futility of amendment" proper grounds for denial of leave to amend under Fed.R.Civ.P. 15(a)).

## B. Stoner's Bad Faith Claim

■ Stoner next argues that genuine issues of material fact exist for trial on her bad faith claim, rendering inappropriate the district court's grant of summary judgment to State Farm on that issue. Stoner based her claim of bad faith on the tort theories of intentional infliction of severe emotional distress, intentional interference with protected property interests, breach of implied covenant of good faith, and breach of duty, as well as the theories of breach of contract and breach of express warranty. Stoner alleges that although State Farm had determined by March 23, 1983 that all of the necessary elements existed to establish its liability for the $85,000 in underinsured motorist benefits under her policy, it did not pay these benefits until June 21,

1983, after her suit was filed. In spite of State Farm's knowledge that Stoner had a complete right to payment and that neither it nor Stoner was responsible to the truckline or liable for the negligence of Deanna Clements, Stoner alleges that State Farm insisted that Stoner and her parents fully release the truck driver, the truckline, Deanna Clements' estate, and all claims under her and her father's policies as a condition to payment of the $85,000. The reason for State Farm's desire to obtain Stoners' release of the truck driver and the truckline, Stoner hypothesizes, is that State Farm colluded with INA–Aetna, the truckline's insurance carrier, to work for the full release of her claims against both carriers.

In response, State Farm states first that South Dakota does not recognize a bad faith cause of action stemming from the alleged failure or delay in paying insurance benefits. Also, State Farm argues that even if South Dakota did acknowledge such an action, it would not apply in the underinsured motorist context, in which State Farm in effect became Deanna Clements' insurer. In addition, State Farm asserts that under South Dakota law, an insurer is not obliged legally to pay underinsured motorist benefits until the insured has reduced his claim against the underinsured motorist to a judgment. Further, even if South Dakota did recognize a bad faith cause of action, state statutes limit a plaintiff's recovery to the amount recoverable under the contract, which Stoner has already received. Finally, State Farm contends that, under the undisputed facts of the case, it acted properly in settling Stoner's claim.

Upon review of the facts in this case, we agree with Stoner that the record does support her bad faith claim. In a blind postscript to claims superintendent Harden on a letter dated April 28, 1983 to Stoner's attorney, Bradley Bonynge, claim representative Rottunda states that he had told Mr. Bonynge in conversation that State Farm:

> would require a full release in this matter as we did not desire to be "dragged"

back into a lawsuit which we would have to defend if in fact he desired to sue the trucking company, which in fact he has already filed in District Court, but has not as of yet been served.

. . . .

It would seem that a counter claim could conceiveably [sic] be brought against Deanna Clements for the truck damage and possibly personal injury, if in fact the truck driver was injured, with Monica Stoner also being brought in on a possibility of an agency basis.

Because of this, I indicated to Mr. Bonynge that as a practical matter, he would probably have to arrange a package settlement with all parties involved.

He attempted to see if in fact we would be willing to go on the basis of a single tort feasor release, however, I indicated to him that we would require a full release in this matter.

In addition, in a letter dated May 4, 1983 to State Farm's attorney, Richard Gregerson, Harden wrote that settlement of Stoner's claim would require:

> a special release which will accomplish the following:
> 1. We need to release Thomas Knepp [the truck driver] and the J.R.R.W. Transport, Inc. [the truckline];
> 2. We need to release J.M. Swank Co., Inc. [which had a lease agreement with Knepp], and,
> 3. We need to release Deanna Clements.

The release that is to be taken would have to dismiss the lawsuit which has presently been filed in District Court against Thomas Knepp, J.R.R.W. Transport, Inc., and J.M. Swank Co., Inc.

We want all of these various potential defendants released so that we would not later be dragged back into this matter by way of a third party action against Deanna Eileen Clements.

 State Farm's position in attempting to settle and interfere with Stoner's third party claims against the trucking company and its driver was not only unwarranted but unconscionable. It had no basis in fact

or in law to expect that either the truck driver or the truckline would bring an action against either Clements or Stoner. Rottunda noted in the Combined Liability Report of January 24, 1983 that Clements' estate contained no assets of any monetary value, and that none of Clements' negligence could be imputed to Stoner. State Farm had no right to compromise Stoner's claim and thereby prolong settlement of her case. Because the facts indicate a cognizable interference on State Farm's part with Stoner's third party claim against the truckline, and their own obligation to her as an insured, we reverse the district court's grant of summary judgment on Stoner's bad faith claim insofar as the claim is based in tort. The claim is remanded to the district court for further proceedings consistent with this opinion. Because we have determined that Stoner has a viable claim on Count II of her complaint, we direct the district court on remand to allow her to amend this count of her complaint.

### III. PUNITIVE DAMAGES

■ Finally, Stoner contends that the district court erred in granting State Farm's motion for partial summary judgment disallowing the recovery of punitive damages. The district court held that punitive damages are not recoverable in South Dakota in an action for failure to pay insurance benefits, citing *Thu v. American Family Insurance Co.*, 292 N.W.2d 109 (S.D.1980). In *Thu*, the South Dakota Supreme Court, noting that under S.D. Codified Laws § 21-3-2 (1979) punitive damages are not recoverable in a breach of contract action, held that the same statute barred the plaintiff from recovering punitive damages in his action based on the defendant's refusal to pay benefits under the terms of a health insurance policy. Stoner argues that because her proposed amended complaint alleges the breach of certain statutes, her cause of action is not based on State Farm's breach of contractual obligations, but on its breach of statutory obligations. We affirm, in accordance with § 21-3-2, the district court's grant of

summary judgment on Stoner's claim for punitive damages to the extent that claim is based on contract. If on remand to the district court Stoner's bad faith claim is upheld, the court should allow compensatory damages, and punitive damages on the tort claim if the principles for applying punitive damages are applicable to this tort claim.

### IV. CONCLUSION

We affirm the district court's grant of summary judgment to State Farm on Stoner's claims under her father's policies, as well as on her claim for punitive damages on the contract claim. We reverse the court's grant of summary judgment to State Farm on Stoner's bad faith claim, including punitive damages, and remand that part of the case to the district court for further proceedings consistent with this opinion.