## State Farm Mutual Automobile Insurance Co. v. Feragotti

*Frank S. Kelker,* for plaintiff.

*Jack H. Kudzma,* for defendant Alberta Kaine, administratrix of Hudson estate.

*Alfred L. Steff Jr.,* for Feragotti defendants.

STEEGE, *J.,* July 7, 1988 — This is a declaratory judgment action. Plaintiff, State Farm Mutual Automobile Insurance Company, seeks a judgment which would exonerate it from the obligation to extend coverage under two policies of automobile liability insurance of which it is admittedly the issuer. The underlying claims, against which State Farm asserts it has no obligation to defend or indemnify, belong to one of defendants, the estate of Lisa R. Hudson.[1] Hudson was tragically killed on May 25, 1986 when the 1976 Chevrolet Chevette in which she was riding as a guest passenger was involved in a one-car accident. As to the other named defendants, Anna Marie Feragotti was the driver and Vincent F. Feragotti, Jr. the owner of the Chevette at the time of the accident which caused Hudson's death. Vincent F. Feragotti, Sr. and Eileen B.

---

1. We shall hereinafter refer to decedent as "Hudson" and to her estate, the party to this lawsuit, as "Hudson's Estate."

Feragotti are the parents of Anna Marie and Vincent Jr. and were the named insureds in the two State Farm automobile liability insurance policies in question. The Chevette was not an insured vehicle under either policy.

The case was tried before the court sitting without a jury. This adjudication and decree nisi are rendered in accordance with Pa.R.C.P. 1517(a). (See Pa. R.C.P. 1601(a)). We have thoroughly considered the entire record, including our notes of testimony and the exhibits and depositions which were offered and received. We make the following findings of fact:

(1) On May 1, 1986, State Farm issued two policies of automobile liability insurance, State Farm policy no. 4499-466-E01-38 and State Farm policy no. 4499-465-E01-38, both identifying Vincent Senior and Eileen as the named insureds. Those policies provide coverage, inter alia, as follows:

"When we refer to a non-owned car, insured means:

"1. the first person named in the declaration;

"2. his or her spouse;

"3. their relatives; and

"4. any person or organization which does not own or hire the car but is liable for its use by one of the above persons."

"Relative means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried unemancipated child away at school."

. . .

"Coverage for the use of other cars:

"The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car."

. . .

"Non-owned Car – means a car not:

"1. owned by,

"2. registered in the name of, or

"3. furnished or available for the regular or frequent use of you, your spouse, or any relatives.

The use has to be within the scope of consent of the owner or person in lawful possession of it."

(2) Vincent Senior and Eileen are set forth as the named insureds on the declaration pages of the State Farm policies.

(3) On May 25, 1986, the residence address of Vincent Senior and Eileen was R.D. no. 2, Box 105, Beechwood Drive, Industry PA 15052.

(4) Anna Marie is the natural daughter of Vincent Senior and Eileen.

(5) On May 25, 1986, Anna Marie lived with her parents at their home in Industry.

(6) Anna Marie was the operator of the Chevette which was involved in the motor vehicle accident which occurred on May 25, 1986 in Chippewa Township, Beaver County. Hudson was a guest passenger in the Chevette at the time of the accident and died from injuries sustained in it.

(7) At the time of the accident which resulted in Hudson's death, the owner of the Chevette was Vincent Junior, and Anna Marie was using the Chevette with Vincent Junior's consent and within the scope of that consent.

(8) Vincent Junior is the natural son of Vincent Senior and Eileen.

(9) Vincent Junior turned 18 years of age on June 26, 1985.

(10) Vincent Junior left his parents' home in Industry in January of 1986 and moved to the home of his aunt and uncle at 836 East Sandusky Street in Findlay, Ohio. He lived with his aunt and uncle at that address from late January 1986 until July 17,

1986. He kept his belongings there, ate his meals and slept there. He received mail at that address and sent mail from it. While there he performed household chores and paid 25 percent of his income to his aunt and uncle as room and board and gener-' ally conducted his daily affairs independent of his parents.

(11) Vincent Junior departed his parents' home in January of 1986, he received the total sum of $50 in financial assistance from his parents, who did not claim him as a dependent for income tax purposes for tax year 1986 or thereafter.

(12) When Vincent Junior left his parents' home in January of 1986, he took with him to Findlay, Ohio most of his personal belongings, including his art material.

(13) Almost immediately after Vincent Junior departed from his parents' home in January of 1986, Anna Marie, his sister, moved into what had been Vincent Junior's bedroom and used it as her own.

(14) While in Findlay, at various times between February and May, 1986, Vincent Junior worked at a McDonalds restaurant and a Rax restaurant, earning a total of $1,488.26 from this employment.

(15) Also while in Findlay, Vincent Junior purchased a VW automobile with his own funds and registered it in Ohio.

(16) Between February 3, 1986 and July 17, 1986, Vincent Junior was actively attempting to find full-time employment in Findlay, Ohio and interviewed or made application with several prospective employers.

(17) Vincent Junior applied for employment at OH Materials Co. in Findlay on May 5, 1986.

(18) Vincent Junior returned to Industry to visit with his family at his parents' home on Memorial Day weekend; 1986, and remained there from May

23 through May 27.

(19) Vincent Junior's visit to his parents' home on Memorial Day weekend 1986 was the first such visit since he had moved to Findlay, Ohio.

(20) Vincent Junior's VW automobile broke down while he was in Industry over the Memorial Day 1986 weekend and was replaced with the Chevette, which was registered in the name of Vincent Junior at the R.D. no. 2, Box 105, Beechwood Drive, Industry, PA 15052 address.

(21) Vincent Junior returned to Findlay on May 27, 1986.

(22) As part of the application process for employment at OH Materials Co., Vincent Junior underwent a blood test on May 28, 1986 and a physical examination on June 3, 1986, both in Findlay, Ohio.

(23) Vincent Junior was hired by OH Materials Co. on July 17, 1986.

(24) From the time of his return to Findlay on May 27, 1986, until July 17, 1986 when he was sent by his new employer to New Jersey on a job assignment, Vincent Junior continued to reside at 836 East Sandusky Street, Findlay.

## DISCUSSION

The sole and ultimate issue to be resolved by the court is whether, at the time of the accident in which Hudson was killed, Vincent Junior was a "relative[]" of his parents, the named insureds, as the term "relative" is defined in the policies. If he was, then the Chevette was not a covered "non-owned car."[2] We must also dispose of the request

2. Counsel for all the parties have agreed on the record that the issue of whether the Chevette was "furnished or available for the regular or frequent use of [] any relatives" of Vincent Senior's and Eileen's has not been placed before us.

made by Hudson's estate that certain expenses which it incurred in proving facts, which State Farm had refused to admit, be taxed as costs against State Farm.

We first address in evidentiary matter, which has been specifically preserved by the parties, which is relevant and important both as to the ultimate issue in the lawsuit and as to Hudson's estate's request for expenses. At the trial, Hudson's estate offered an exhibit "G" having attached to it 12 exhibits, all of which were offered as business records of Vincent Junior's employer, OH Materials. By that time, State Farm had withdrawn objection to all of the attachments except those numbered "6" and "7." No. 6 is a medical certification which indicates, among other things, that Vincent Junior underwent a pre-employment physical examination on June 3, 1986. No. 7 is a sheet showing the results of a blood and/or urine test which, on its face, was administered to Vincent Junior by his prospective employer on May 28, 1986. State Farm challenges the admissibility of these documents on the ground that they fail to qualify as "business records" and are therefore inadmissible hearsay. We disagree, and we hold that those exhibits are admissible as legitimate business records.

The Uniform Business Records as Evidence Act, 42 Pa.C.S. §6108 reads in part as follows:

"A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission."

Counsel for Hudson's estate deposed one Jackie Ernsthausen, the custodian of these records, and she testified as to the manner in which she prepares and maintains them. She was able to give sufficient information relating to the preparation and maintenance of the records to convince us of their trustworthiness. They were made in the regular course of business near the time of the events, and they are admissible under the act. The only purpose for which they were introduced was to show the dates on which the respective examinations or tests were administered. The examination and the tests were documented and recorded promptly in the ordinary course of business of OH Materials. There is nothing to suggest that there would be error or lapse of memory in recording the information which is relevant here. See *Commonwealth v. Mobley*, 450 Pa. 431, 301 A.2d 622 (1973); *Estate of Indyk*, 488 Pa. 567, 413 A.2d 371 (1980). Each of these documents is a classic illustration of the business records exception to the hearsay rule and the objection to their admissibility was unfounded.

Turning to the ultimate issue, the policies of insurance before us define a "relative," addressing the insured, as "a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school." Our research has not uncovered any Pennsylvania cases, or federal cases originating in this state, which construe the phrase "who lives with you" as used in a policy of insurance, nor have we been directed to any. Looking beyond, we find a case closely in point in *Stoner v. State Farm Mutual Automobile Insurance Company*, 780 F.2d 1414 (8th Cir. 1986). In that case plaintiff had been seriously injured while a guest passenger in a vehicle being operated by a friend. At the time of the acci-

dent she was in the Navy, stationed in Mississippi, but was visiting with her parents in South Dakota. She attempted to qualify as an insured under two State Farm automobile insurance policies which had been issued to her father. The policies contained relevant definitions in language identical to that in the policies before us. In the district court, plaintiff contended that she had remained a legal resident of South Dakota even though her temporary commitment to the Navy and her various assignments required that she "live" in various other places, and that she "live[d] with" her father for purposes of the policy coverage. State Farm there argued that while plaintiff might be a legal "resident" of her father's home she did not "live with" her father as the policy of insurance defined that term. Both the district court and the court of appeals agreed. The court of appeals said, 780 F.2d at p. 1417:

"We find no error in the district court's reasoning that if the phrase "lives with you" were intended to mean legal residence, the statement that "it includes your unmarried and unemancipated child away at school" was added unnecessarily. . . . [T]he phrase "lives with you" is susceptible of only one interpretation, i.e., actually living in fact. . . ." We shall follow the Eighth Circuit's (and State Farm's) reasoning in *Stoner* and we shall deny State Farm's request for declaratory judgment.

Hudson's estate has also requested that we enter an order taxing as costs against State Farm the expenses which it incurred in proving the facts which State Farm had denied (or had refused to admit) in its response to Hudson's estate's requests for admissions. Hudson did file requests for admissions and State Farm did respond. Hudson's estate points to Pa.R.C.P. 4019(d), and specifically to State Farm's

refusal to admit its requests numbered 19 through 25, 47 and 48. In order to prove the facts for which she sought admission in requests numbered 47 and 48, Hudson's estate's counsel was compelled to travel to Findlay, Ohio and depose two custodians of business records in the employ of Vincent Junior's employer. Jackie Ernsthausen testified generally as to the preparation and maintenance of the medical records (in this case, the record of a physical examination and a blood test), and Joann Moser testified generally as to payroll and related records. By the time of trial, State Farm was objecting to the admissibility of only the physical examination certification and the form setting forth the blood test results. As we have earlier discussed, the objections to the admissiblility of those documents were not well-founded and we have admitted them. As to requests for admission numbered 47 and 48, we conclude that Hudson's estate was unnecessarily forced to prove and has proven the matters which State Farm refused to admit and that Hudson's estate is entitled to its reasonable expenses incurred in making its proof.

We conclude that State Farm was justified in refusing to admit requests for admissions 19 through 25. Each of these requested an admission as to the living arrangements of Vincent Junior in Findlay, Ohio. There was already a great deal of evidence in the record, principally in the deposition of Vincent Junior, relating to those facts. Hudson's estate produced Emily Lennig, Vincent Junior's aunt, who testified that Vincent Junior lived in her home in Findlay from January 1986 to July 1986, and as to other matters contained in the contested requests for admission. It cannot be said that State Farm would be bound to know the things to which Mrs. Lennig testified, and we will not tax as costs the ex-

pense of returning Mrs. Lennig to Beaver to testify. We shall, however, grant Hudson's motion in every other respect; we shall tax against State Farm all the other items of expense set forth in Hudson's estate's motion.

We make the following

## CONCLUSIONS OF LAW

(1) The phrase "lives with" as used in the definition of "relative" in the State Farm policies of insurance is clear and unambiguous. It means actual, current and regular habitation at the place where one conducts his or her customary daily affairs.

(2) Anna Marie was living with Vincent Senior and Eileen, her parents, at the time of the automobile accident which occurred on May 25, 1986.

(3) Vincent Junior was living at 836 East Sandusky Street, Findlay, Ohio during the period from late January 1986 through July 17, 1986 and was not "liv[ing] with" Vincent Senior and Eileen at R.D. no. 2, Box 105, Beechwood Drive, Industry during that period of time.

(4) On May 25, 1986, the Chevette was a "nonowned car" under the provisions of the State Farm policies of insurance.

(5) On May 25, 1986, Anna Marie was an insured under the provisions of the State Farm policies of insurance.

(6) Coverage for damages which Anna Marie may become legally liable to pay for her use of the Chevette at the time of the accident which occurred on May 25, 1986 must be provided by State Farm under its policies of insurance.

(7) Hudson's estate proved the items numbered 6 and 7 of its exhibit "G" to be sufficiently trustworthy to be admitted into evidence as the business records

of OH Materials Co. under the Uniform Business Records as Evidence Act, 42 Pa. C.S. §6108.

(8) Expenses in the amount of $1,692.37 incurred by Hudson's estate in proving the items numbered 6 and 7 of its exhibit "G" are reasonable. Because of the failure of State Farm to admit Hudson's estate's request for admissions numbered 47 and 48, those expenses are taxed as costs against State Farm under the provisions of Pa.R.C.P. 4109(d).

We enter the attached

## DECREE NISI

For the reasons set forth in the foregoing adjudication, State Farm Mutual Automobile Insurance Company is ordered to provide coverage for Anna Marie Feragotti under its policies numbered 4499-466-E01-38 and 4499-465-E01-38, for the automobile accident which occurred on May 25, 1986 while Anna Marie was operating a 1976 Chevrolet Chevette. State Farm's request for entry of a declaratory judgment in its favor is denied.

Pursuant to Pa.R.C.P. 4019(d), we hereby tax as costs against State Farm, to be awarded to Alberta Kaine, administratrix of the estate of Lisa R. Hudson, deceased, the sum of $1,692.37.

This decree nisi shall become a final decree pursuant to Pa.R.C.P. 227.1-227.4.

