684 So.2d 890 (1996)
Reginald TAYLOR and Angelica R. Taylor-Dean, Appellants,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, etc., Appellee.
No. 94-1097.
District Court of Appeal of Florida, Fifth District.
December 20, 1996.
*891 Stephen P. Kanar, Orlando, for Appellants.
Lora A. Dunlap, of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, for Appellee.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
We grant en banc review withdrawing our prior opinion in this case and replacing it with this opinion.
The issue in this case is whether the "kids in the military" exception to the general rule that an individual must physically occupy a "household" in order to be a member of it should be applied in this case in order to find that Mrs. Taylor-Dean, a married woman in the military who had established a separate household with her spouse and child, was also a member of her mother's household at the time her brother was injured in an accident. The trial court refused to extend the "kids in the military" exception to cover a married woman with a child of her own. We agree and affirm.
Mrs. Taylor-Dean and her husband, both members of the military, established a marital household in Germany in 1989. They shared that residence for three years until just before the accident involved herein when Mrs. Taylor-Dean received a military assignment back to Fort Sam Houston, Texas. She was living in Texas with their child only because of this military assignment when this accident occurred.
Reginald Taylor, Mrs. Taylor-Dean's adult brother, resided with their mother in the mother's home at 1640 Trumbo Street in Winter Garden, Florida, when he was struck by an uninsured motorist. Reginald Taylor claimed coverage under Mrs. Taylor-Dean's automobile insurance policy claiming he was a member of her household.
The uninsured motorist provision in Mrs. Taylor-Dean's policy covered "a family member" which was defined as "a person related to you by blood, marriage or adoption who is a resident of your household." The dispositive question is, therefore, whether Reginald Taylor was a member of Mrs. Taylor-Dean's household at the time of the accident. Obviously he was not (nor has he been for several years) physically residing with Mrs. Taylor-Dean at the time of the accident. The only way that Mr. Taylor can claim under his sister's policy is for this court to hold that the mother's household is, in fact, the household of Mrs. Taylor-Dean because she was in the military service. We are thus urged to apply the "kids in the military" exception to the general rule. The "kids in the military" exception is based on the proposition that entering the military does not necessarily indicate that one intends to permanently change his or her residence. Therefore, if a permanent home is not intended, the "kid" may have two residences in factone on the military base and the other one continuing at his or her original home. See Wiley v. Great American Insurance Co., 1995 WL 548777 (Conn.Super.Ct. Sept.7, 1995).
But it is not the fact that Mrs. Taylor-Dean is in the military that we should focus on. That is almost irrelevant. Certainly, if she weren't in the military (or in college), appellants would have no argument at all. But an even more important fact is that Mrs. Taylor-Dean was a member of another household composed of her husband and her child at the time of the accident. Her family relationship would be the same whether she was in the military, teaching school or working in a factory. She simply no longer qualified as a "kid" in the "kids in the military" exception. She did not intend to ever return to her mother's household as a "kid" to live within her mother's family unit. She testified at trial:
Q. Now assuming your mother is in good health and is alive when you retire, she's going to stay at 1640 Trumbo Street, isn't she?
A. Yes.

*892 Q. And you will live in another house nearby, correct?
A. There's not another house for me to live in. We have to build another house.
Q. You would build another house, wouldn't you? So if you continue as the circumstances are today with your mother still living and you were to retire, you would build a house next door or nearby your mother on her property and move into that house and retire, correct?
A. Correct.
This testimony reflects Mrs. Taylor-Dean's intent to return to Florida as a member of a separate household consisting of herself, her husband and her child and not as a "kid" returning home.
The fact that Mrs. Taylor-Dean assisted her mother in purchasing her mother's home and visited her frequently, while admirable, is of no import in resolving the issue of which household includes Mrs. Taylor-Dean. Nor does the fact that Mrs. Taylor-Dean retained her Florida driver's license and continued to vote in Florida reflect anything other than her intent to continue to claim Florida residency. It does not establish a "household" in Florida.
AFFIRM.
PETERSON, C.J., and COBB, HARRIS and THOMPSON, JJ., concur.
ANTOON, J., concurs and concurs specially with opinion in which COBB, GOSHORN and GRIFFIN, JJ., concur.
W. SHARP, J., dissents, with opinion, in which DAUKSCH, J., concurs.
ANTOON, Judge, concurring specially.
I concur in the result reached by the majority but agree with the dissent that this case does not involve the "kids in the military" exception.
When people enter the military, they are required to designate a permanent address known as the "home of record," which is their address at the time they enter active duty and in many cases their parents' home address. A military person's home of record often remains the same throughout his or her entire career even when he or she is periodically transferred from duty station to duty station across the country and around the world.
In addition to possessing a home of record, a military person can also establish a domicile or state of residency in a state to which he or she has been transferred. See 25 Am.Jur.2d Domicile § 32 (1996). A military person may choose to abandon a prior domicile and establish a new state of residency for a variety of reasons. However, once a domicile has been established, a move from that state will not necessarily cause a military person to abandon his or her state of residency. Id. For example, as pointed out by the dissent, military personnel who are stationed elsewhere are permitted to maintain their domicile in Florida and to continue to receive some of the privileges, such as voting, enjoyed by citizens who live here on a consistent basis.
The insurance contract in question here does not involve the determination of an insured's home of record or domicile. Instead, the contract provided insurance coverage for Captain Taylor-Dean and her "family members." The policy defined "family member" as:
[A] person related to [the insured] by blood, marriage or adoption, who is a resident of [the insured's household].
As noted above, "home of record," "state of domicile," and "household" are not synonymous terms. At the time of her brother's accident, Captain Taylor-Dean's household was not her home of record or her state of domicile, but instead her household was in Texas where she and her family resided. Certainly, under the terms of her insurance policy, Captain Taylor-Dean's brother would have been covered had he been living with her in Texas at the time of the accident. Instead, her brother was living with his mother in Florida, Captain Taylor-Dean's home of record.
In my view, application of the dissent's theory would permit unintended and illogical results. For example, under the dissent's theory, Captain Taylor-Dean's insurance policy could be construed to provide coverage *893 for more than one "household"both hers and her mother's. Another possibility would be that her adult brother who was living with his mother could be covered while her husband and child living in the same home with her would not be covered. Such results would be inconsistent with the plain language of the insurance contract.
COBB, GOSHORN and GRIFFIN, JJ., concur.
W. SHARP, Judge, dissenting.
I respectfully dissent. This case does not involve a "kids in the military" exception. The concept of a military person retaining a permanent residence in spite of being transferred from temporary post-to-post, or until a permanent residence is established elsewhere, applies to adults as well as to unmarried kids. If not, military personnel lose their rights to vote,[1] rights to have a state exercise jurisdiction in a divorce or child custody case,[2] rights to have a particular state's driver's license,[3] and as in this case, the ability or right to have an automobile insurance coverage for resident relatives of a permanent residence, because by virtue of this opinion, Angelia R. Taylor-Dean has had no permanent residence since she joined the United States Army in 1986.
I take issue with the "finding" by this court that Taylor-Dean established a permanent residence in Germany, thereby justifying a conclusion that she gave up her original permanent residence in Florida. The trial court did not make such a finding. It relied on the fact that the accident took place more than two years after Taylor-Dean entered the military, that she was more than twenty-one years old, and that she had chosen to make the military a career.
Further, the evidence in this case does not support this court's additional "finding" that Taylor-Dean was living in Texas with her child when this accident occurred. At that time, she had no other permanent residence other than her family home in Florida. In sum, she was, at the time of the accident, sharing an off-base apartment with another officer-friend, while taking a training course at a military base in Texas. She had no child. Her husband was stationed in Germany. If the Trumbo Street home in Florida was not her "permanent residence" at the time of the accident, she had none.
Reginald Taylor and Angelia R. Taylor-Dean, brother and sister respectively, appeal from a final judgment in favor of United Services Automobile Association (United), in which the trial court held there was no uninsured motorist coverage for Reginald under Taylor-Dean's insurance policy with United Services Automobile Association. The trial court found that Taylor-Dean was not a resident of her mother's and brother's household because, although she was stationed at a temporary duty assignment when her brother's accident occurred in 1992, she was an adult and had been a captain in the United States Army for five years. Based on the undisputed facts established by this record, I disagree and would reverse.
At the time of the accident, Taylor-Dean had an automobile policy issued by United which provided uninsured motorist coverage for "you or any family member." "Family member" was defined as "a person related to you by blood, marriage or adoption who is a resident of your household." The policy provided no definition for the terms "household" and "resident."
The record established that on September 26, 1992, Reginald was hit by an uninsured motorist, causing him severe and permanent injuries. At the time of the accident, Reginald was living with his mother and other siblings at 1640 Trumbo Street, Winter Garden, Florida. At that time, Taylor-Dean was a captain in the United States Army. She had been assigned to a military base in San Antonio, Texas, to take an officers' training course. She was sharing an off-base apartment with a friend. Her husband was stationed in Germany. Her child had not then been born.
Taylor-Dean had always maintained strong ties with her family in Winter Garden. *894 She grew up in Winter Garden in a home located at 46 Trumbo Street where she lived with her mother, her brother Reginald, and other siblings. While Taylor-Dean was growing up, her mother was the sole support of the family. Taylor-Dean worked during the summer vacations and saved her money to help the family.
In 1980, Taylor-Dean went to college, entered the ROTC program, and graduated from college and graduate school. In 1986, she and her mother planned to build a new home on Trumbo Street for the family. It was primarily funded by Taylor-Dean. Various members of the family helped to physically build it, including Taylor-Dean. This new house was given the address of 1640 Trumbo Street.
In 1986 while the new house was under construction, Taylor-Dean was in her last year of graduate school. After graduation, she reported to take her Officer Basic Training Course. During this time, the family moved into the new house, bringing Taylor-Dean's personal possessions to that location also. Upon completing basic training, she returned to the new house on Trumbo Street and helped finish its construction.
In August of 1986, after the house on Trumbo Street was finished, Taylor-Dean commenced her active duty in the Army. At all times during her military service she listed 1640 Trumbo Street as her permanent residence. The record does not show that she ever bought a home anywhere else, but rather she lived in rented private apartments, or in government housing. She returned to Trumbo Street for every leave and vacation period made available to her, except one trip to visit her husband in Germany shortly before they married in Korea, and one visit with her husband's family after they were married.
Taylor-Dean sent $400.00 to $1,800.00 per month to her mother. These sums were for the purpose of paying the mortgage and household expenses for the Trumbo house, in addition to other expenses incurred by her mother. The family, as well as Taylor-Dean, considered that the Trumbo house belonged to her, although it was titled in her mother's name. Taylor-Dean bought at least half of the furniture for the house, and kept her clothing and important papers there.
In addition, Taylor-Dean maintained her voter's registration in Winter Garden, Florida, and voted absentee. She continued to pay dues to the Missionary Baptist Church in Winter Garden. She also listed the Winter Garden address on her Florida driver's license and kept her bank account at a bank in Winter Garden. When Taylor-Dean first obtained automobile insurance, she certified she was a resident of Florida.
Military service took Taylor-Dean to Korea in 1988. While stationed there, she married. At that time, her husband was stationed in Germany. They established no joint, temporary residence in Korea. She listed 1640 Trumbo as her residence on her marriage license. She testified that she and her husband intended to return to live in the Trumbo house, after completing their tours of duty with the military. She also testified that if her mother was still living at that time and living in the house, she and her husband planned in the future to build another house next door.
In 1989, Taylor-Dean requested a transfer to Germany. She was stationed in Germany from July 1989 through part June of 1992. In 1991, Taylor-Dean had a long "free" leave which she spent at 1640 Trumbo Street. She bought a car (a Mercedes), which she shipped to Germany. She and her husband lived in U.S. government-owned housing, off base, while she was in Germany. She obtained a European driver's license, but never gave up her Florida driver's license. In 1992, she was assigned to Fort Sam Houston in Texas. Her husband remained in Germany.
Taylor-Dean brought the Mercedes back with her from Germany to Winter Garden. Based on the advice of her insurance company, United, she initially stored the Mercedes at Trumbo Street under her mother's care and later moved it to a friend's garage which was also in Winter Garden. She took a smaller, less expensive car with her to her next duty station in Texas. Both of her cars were insured through United and had full uninsured motorist coverage. The policy was mailed to Taylor-Dean at 1640 Trumbo *895 Street, the same address she listed on the policy while stationed in Texas, at the time of the accident. She maintained no Texas bank account, obtained no Texas driver's license, and did not register to vote in Texas. Clearly she considered neither Texas nor Germany to be her permanent residence.
At the time of the trial, Taylor-Dean and her husband were stationed at Fort Gordon in Augusta, Georgia, where they were living with their child, who was born after the accident. Neither Taylor-Dean nor her husband had formed any attachments to Georgia.
Taylor-Dean's connections to Trumbo Street never changed during her military service. She testified without contradiction that she considered 1640 Trumbo Street, Winter Garden, Florida, to be her home and permanent residence, that she had never acquired a permanent residence elsewhere during her active military service, and that she and her husband intended to return to the Trumbo house to live when they left military service.
The issue in this case is whether Taylor-Dean was a resident of the household located at 1640 Trumbo Street in Winter Garden, Florida, at the time her brother was injured in 1992. It is undisputed that her brother was a resident of that address. However, Taylor-Dean had joined the military and served at various duty stations since 1986. Because of her military service, she was not physically present at 1640 Trumbo Street except on leave time and vacations. The question of whether she remained a resident of that household was one properly resolved by a trial, since her residence vel non presented a mixed question of law and fact.[4]
As defined by the common law, many courts have characterized the terms "resident" and "residency" as ambiguous, elastic, without an concrete or set meaning, and murky at best.[5] However, the word "resident" has many different meanings in law, and the one most applicable is largely determined by the statutory context in which that term is used.[6] In the context of insurance coverage cases, if the term "resident" or "residency" is not further defined or limited by the policy itself (which in this case it is not),[7] courts generally interpret the term in a broad way to afford the maximum amount of coverage.[8] This rule of interpretation is based on the well established maxim that a contract should be strictly construed against the drafter (i.e., the insurance company), and to carry out Florida's statutory policy of providing broad uninsured motorist coverage for the general public.[9]
In resolving the question of whether a person living apart from her family while serving in the Armed Forces remains a member of her family's household, courts in other jurisdictions have concluded that temporary absence from the family home in order to *896 fulfill active duty assignments is beyond the control of the person. Thus, the absence of the person's physical presence in the family home while fulfilling active military duty assignments is not determinative. Unless there is proof that the person established another permanent residence elsewhere, courts conclude that the insured remains a resident of the original household. See David B. Harrison, Annotation, Who is "Resident" or "Member" of Same "Household" or "Family" as Named Insured, Within Liability Insurance Provision Defining Additional Insured? 93 ALR 3d 420 § 7 (1979). Whether the person intends to return to the family home or establish a permanent residence elsewhere is also a critical issue.[10]
A contrary holding deprives a person serving in the military service of any "permanent residence," a status which carries with it numerous legal benefits, one of which is uninsured motorist coverage for the insured's resident relatives. Thus the courts have repeatedly concluded that if an individual has a permanent residence or domicile, it remains that person's legal permanent residence while serving in the military, unless and until that individual establishes a different permanent residence elsewhere.[11] As the party arguing that permanent residency in the original household is nonexistent, the insurer bears the burden of proving that the insured abandoned the original residence in favor of a different one.[12]
Insofar as I can ascertain, in cases involving military service personnel, Florida courts have construed the term "resident" and "residency," when used without further definition in insurance policies, in the same manner as the majority of courts in other jurisdictions.[13] In Trezza v. State Farm Mutual Automobile Insurance Co., supra, the court addressed the question of whether a person in military service remains a resident of his former household when he has not evidenced an intent to alter his residence and is only physically absent from home for the purpose of serving his country in the military service of the United States. Acknowledging that this was a question of first impression in Florida, the court held that entry into the military service does not change a person's residence where that person evidences no intent to permanently change his residence:
We join those jurisdictions adhering to the majority rule that: `[t]he domicile of someone in military service does not change to the place where he is stationed nor does it shift every time the person is transferred to another base....' Absent a manifest intention to change residence, a person in the military remains a resident of his former address.
519 So.2d at 652. In factual contexts other than insurance coverage and active duty military service personnel, Florida courts have held that a temporary or tentative residence at another place does not cause the loss of a person's original residence status, absent any intent to do so.[14]
*897 I think the two cases decided by this court which United cites in support of its position that Taylor-Dean was no longer a resident of 1640 Trumbo Street are distinguishable. American Security Insurance Co. v. Van Hoose, 416 So.2d 1273 (Fla. 5th DCA 1982), concerned an adult, married daughter who had moved out-of-state with her husband and established a permanent residence elsewhere. Later, after she separated from her husband, she returned to Florida and lived near her parents in a separate residence. Her father paid part of his daughter's rent and support, and the various family members had much contact back and forth between the residences. Despite these facts, this court concluded that, because the daughter moved away and established a residence elsewhere after her marriage, no residency in Florida continued. Further, after returning to Florida, the daughter and her children lived in a household distinct and separate from that of her parents.
In Allstate Insurance Co. v. Pierce, 597 So.2d 388 (Fla. 5th DCA 1992), an adult son married while serving in the military. The couple lived in another state and only returned to the mother's residence in Ohio for a short time after the son left the military. He then enrolled in Embry Riddle University and moved to Florida with his wife. Although he had only been in Florida a short time prior to his accident, this court ruled he was not a resident of his mother's household. However, the case turned primarily on whether the insurance company was estopped to disclaim coverage for the son due to various representations an agent made to the mother (the insured) who had sought to have coverage for her son continued after his move to Florida. No one argued seriously that the son continued as a resident of the mother's Ohio household, and there was no testimony about the son's intent to return to Ohio to make his mother's home is permanent residence.
In this case, the record established without dispute the extensive ties between Taylor-Dean and her family and the residence at 1640 Trumbo Street, Winter Garden, Florida. In fact, her connections with her family and the Trumbo Street residence are far more extensive and compelling than most residency cases involving active duty military personnel. The uncontroverted evidence also established that Taylor-Dean intended to return to that residence after completing her active military duties. The record failed to show that she ever established anything other than a temporary residence in connection with her active military service elsewhere.
In light of these facts, I conclude there is no basis in this record to find that Taylor-Dean ever abandoned Trumbo Street as her permanent residence. Under these circumstances, whether the undisputed facts fit within the policy definition of the insurance policy is a question of law that may be decided on appellate review. Trezza v. State Farm Mutual Automobile Insurance Co., supra; Blanchard v. Peerless Insurance Co., supra. Accordingly, I would hold that Taylor-Dean was a resident of the 1640 Trumbo Street household shared by her brother at the time of the 1992 accident. Therefore, Reginald is entitled to uninsured motorist coverage under his sister's automobile policy with United. However, because the Florida Supreme Court has not directly addressed this issue. I would also certify the following question as one of great public importance:
DOES A MEMBER OF THE MILITARY LOSE HIS OR HER STATUS AS A RESIDENT OF THAT PERSON'S ORIGINAL PRE-MILITARY HOME, FOR PURPOSES OF DETERMINING UNINSURED MOTORIST COVERAGE FOR RESIDENTS OF THAT HOME, BECAUSE HE OR SHE HAS ESTABLISHED TEMPORARY RESIDENCES ELSEWHERE IN CONNECTION WITH MILITARY DUTY ASSIGNMENTS, WITHOUT ESTABLISHING A DIFFERENT PERMANENT RESIDENCE?
Fla.R.App.P. 9.030(a)(2)(A)(v).
DAUKSCH, J., concurs.
NOTES
[1] § 97.041, Fla.Stat.
[2] §§ 61.021, 61.10, Fla.Stat.
[3] § 322.08, Fla.Stat.
[4] See Blanchard v. Peerless Insurance Co., 958 F.2d 483 (1st Cir.1992); Automobile Club Insurance Co. v. Craig, 328 F.Supp. 988 (E.D.Ky. 1971); Row v. United Services Automobile Ass'n., 474 So.2d 348 (Fla. 1st DCA 1985); Wood v. Mutual Service Casualty Insurance Co., 415 N.W.2d 748 (Minn.Ct.App.1987).
[5] See Blanchard v. Peerless Insurance Co., supra; Stoner v. State Farm Mutual Automobile Insurance Co., 780 F.2d 1414 (8th Cir.1986); Continental Insurance Co. v. McKain, 820 F.Supp. 890 (E.D.Pa.1993), affirmed, 19 F.3d 642 (3d Cir. 1994); General Guaranty Insurance Co. v. Broxsie, 239 So.2d 595 (Fla. 1st DCA 1970); Great American Insurance Co. v. Allstate Insurance Co., 78 N.C.App. 653, 338 S.E.2d 145, rev. denied, 316 N.C. 552, 344 S.E.2d 7 (1986); Boswell v. South Carolina Insurance Co., 353 Pa.Super. 108, 509 A.2d 358 (1986); Pierce v. Aetna Casualty and Surety Co., 29 Wash.App. 32, 627 P.2d 152 (1981).
[6] See Kelm v. Carlson, 473 F.2d 1267, 1271 (6th Cir.1973) quoted in BLACK'S LAW DICTIONARY 1309 (6th ed. 1990).
[7] See Stoner v. State Farm Mutual Automobile Insurance Co., supra; Continental Insurance Co. v. McKain, supra; Allstate Insurance Co. v. Pierce, 597 So.2d 388 (Fla. 5th DCA 1992).
[8] Trezza v. State Farm Mutual Automobile Insurance Co., 519 So.2d 649 (Fla. 2d DCA 1988); Row v. United Services Automobile Ass'n., supra; General Guaranty Insurance Co. v. Broxsie, supra; Great American Insurance Co. v. Allstate Insurance Co., 78 N.C.App. 653, 338 S.E.2d 145, rev. denied, 316 N.C. 552, 344 S.E.2d 7 (1986); Long v. Coates, 60 Wash.App. 710, 806 P.2d 1256 (1990), rev. denied, 116 Wash.2d 1014, 807 P.2d 884 (1991).
[9] See Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla.1971).
[10] See Beck v. Pennsylvania National Mutual Casualty Insurance Co., 429 F.2d 813 (5th Cir.), rehearing denied, 432 F.2d 563 (5th Cir.1970); Donegal Mutual Insurance Co. v. McConnell, 562 So.2d 201 (Ala.1990); Great American Insurance Co. v. Allstate Insurance Co., supra; Wood v. Mutual Service Casualty Insurance Co., supra; Long v. Coates, supra.
[11] See United Services Automobile Ass'n. v. Evangelista, 698 F.Supp. 85 (E.D.Pa.1988), affirmed, 872 F.2d 414 (3d Cir.1989); Central Manufacturers' Mutual Insurance Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102 (1948); Boswell v. South Carolina Insurance Co., supra.
[12] See Unanue v. Unanue, 141 A.D.2d 31, 532 N.Y.S.2d 769 (1988); Small v. Small, 96 Misc.2d 469, 409 N.Y.S.2d 379 (N.Y.Sup.Ct.1978).
[13] See Row v. United Services Automobile Ass'n., supra; General Guaranty Insurance Co. v. Broxsie, supra.
[14] See, e.g., Mast v. Reed, 578 So.2d 304 (Fla. 5th DCA 1991) (no change of permanent residence when wife moves with husband out of state to his active duty station); Sutherland v. Glens Falls Insurance Co., 493 So.2d 87 (Fla. 4th DCA 1986) (son trying out transition to living by himself, still a resident of mother's household); Row v. United Services Automobile Ass'n., supra; (son living in apartment complex owned by father, where he had access to family living quarters in another apartment, held to be a member of father's household); Cruickshank v. Cruickshank, 420 So.2d 914 (Fla. 1st DCA 1982) (residency requirements for filing for divorce in Florida met by military husband stationed outside of Florida); Sanders v. Wausau Underwriters Insurance Co., 392 So.2d 343 (Fla. 5th DCA 1981) (wife temporarily separated from husband).