John D. Bennett, S.
The question at issue is the domicile of the decedent and the extent of this court’s jurisdiction over the *420 estate as well as of the parties now before the court. Two proceedings were instituted in this court relating to the affairs of the above decedent, the first one by petition of the decedent’s grandson to compel production of an instrument asserted by the respondents to be decedent’s last will and testament. The respondents were Irma Kalvet Moerd and an attorney who practices in this county. A hearing was held in that proceeding at which the respondent attorney testified that he prepared the instrument in question in August of 1963 at the request of the decedent, that he had kept it in his safe until he sent it to the Virgin Islands in February, 1968 at the request of his corespondent. He apparently knew of the grandson and said he tried to locate him. He also asserted that the executrix and principal beneficiary named in the instrument had moved to the Virgin Islands and had asked him to ‘ ‘ try to probate the will. ” No proceedings were actually instituted in this court for that purpose but the attorney admittedly did prepare a citation for issuance out of this court in February, 1968. This he personally served upon the grandson and stated therein that his client, Irma Kalvet Moerd, resided at 200 West Merrick Road, Freeport, New York, in this county, and that she had 1 ‘ lately applied ’ ’ to have the said instrument dated August 2, 1963 duly proved in this court as the last will and testament of the decedent. The citation thus prepared by the attorney also recited that the decedent at the time of her death was a resident of 200 West Merrick Road, Freeport, in this county. The attorney testified, however, that he “ learned ” later on from the decedent’s death certificate that she had been Ci domiciled ” in the Virgin Islands and therefore decided to forward the alleged will to Mrs. Moerd in the Virgin Islands for her to bring probate proceedings there.
The decedent’s grandson, as petitioner, then instituted the second proceeding in this court and caused Mrs. Moerd to be served with citation making her a party. He now prays for letters of administration to be issued to him and alleges that the afore-mentioned instrument is not in fact the last will and testament of the decedent, but was executed while the decedent lacked the physical capacity to make and execute a valid will; that said will was executed while the deceased was under undue influence exerted by Irma Kalvet Moerd; that the deceased was under duress and coercion, despondent at her son’s condition of terminal cancer and from which the said son died on August 6, 1963, four days after the ‘ ‘ will ’ ’ was executed. In this connection, the scheme of the alleged will is significant, for it purports to give the entire estate to decedent’s son about to die, *421 providing that: “ In the event he (the son) predeceases me, then I give * * * all of my property * * * as follows:
“ (a) The sum of ONE HUNDRED DOLLARS ($100.00) to my grandson, LLOYD T. MARSHALL, if he survives me.
“ (h) All the rest, residue and the balance of my estate * * * to my beloved friend, IRMA KALVET ’ It is significant to note that the purported will names as executor not the son or ‘ ‘ primary ’ ’ beneficiary but Mrs. Moerd and the attorney aforementioned, to serve as executrix and substitute executor, respectively.
Irma Kalvet Moerd has appeared in this proceeding and by her answer denies that the decedent resided at the time of her death at the afore-mentioned address in Freeport. She affirmatively alleges that the decedent was domiciled in Frederiksted, St. Croix, Virgin Islands, from November 6,1965 until her death on September 21, 1967. The court therefore ordered a hearing to be held on the question of domicile.
On August 1, 1968 the court received documentary evidence on behalf of the petitioner grandson who also testified in his own behalf. The respondent, Irma Kalvet Moerd, did not appear at the hearing but her attorney examined the witnesses and himself testified for Mrs. Moerd, as did also her son-in-law. The proof indicated that Mrs. Moerd had formerly resided at the address in Freeport, Nassau County, and had also owned other real property at Oceanside in this county as late as July, 1968 when she sold it. She also returned to this county on numerous occasions after she had moved to St. Croix. It further appeared that the respondent, Mrs. Moerd, maintains a residence of some kind at St. Croix, but the nature thereof was not disclosed nor did the respondent come forward with any proof that the decedent had any permanent place of abode at St. Croix. The decedent was taken there by Mrs. Moerd some time after she had attempted to commit suicide and she suffered an injury to her hip while at St. Croix, which confined her to a nursing home there. This was part of or connected to a hospital, but no hospital or other records were submitted nor was there any other proof as to the decedent’s “ residence ” in St. Croix.
The proof does indicate, on the other hand, that the decedent had been domiciled in Nassau County at the time the attorney prepared the instrument now alleged to be her will. The said instrument which the attorney testified was executed by the decedent in 1963, specifically recites that she was at that time “ a resident of and domiciled in the Village of East Rockaway, Nassau County, State of New York.” Decedent is also shown *422 by a police report to have resided in this county at least until October, 1965, and it is not contradicted that Mrs. Moerd herself had been employed by the decedent’s son (now deceased) some years ago.
The certificate of the decedent’s death, apparently issued in the Virgin Islands where she passed away, was not offered in evidence and the attorney’s conclusion as to domicile based upon some recital therein does not appear to have any foundation in fact. The admissions of Mrs. Moerd and her attorney, contained in the form of citation served upon the grandson, indicate quite persuasively that Mrs. Moerd and her attorney considered Nassau County to be the residence of herself in February, 1968 and recognized at that time that the decedent had also been a resident of Nassau County at the time of her death as stated in that ‘1 citation. ’ ’ The attorney, by affidavit and by his testimony, sought to explain away those admissions, stating that this was a “ deception ” designed by him to procure an affidavit of heirship from the grandson. Deception it may have been but the court also concludes that the attorney did not so willfully use the process of this court, especially in view of the testimony given by him as follows:
By Mr. Charwat: “ Q. Isn’t it true that you stated to me you had forgotten this citation had to be signed by the Clerk of the Court in a Surrogate’s court proceeding? “ A. I don’t think I said that.”
The answer was equivocal at best but there are also letters of the attorney indicating that the respondent fully intended to proceed with the probate in this county, presumably on the advice of counsel that she was domiciled here. The conclusion is inescapable that the attorney, acting for Mrs. Moerd as his client, had actually intended to initiate the proceedings in this court to probate the will, knowing and believing that the decedent was domiciled in this county. While Mrs. Moerd’s probate petition was not actually filed in this court and the Clerk of this court did not issue any citation, a copy was admittedly served upon the grandson and is in evidence here along with the aforementioned letters. The admissions therein contained have strong probative value in the opinion of the court and have bearing upon the true domicile of the decedent at the time of death.
The testimony of Heriberto Xjimenez shows that the decedent left by plane for St. Croix with Mrs. Moerd on November 6,1965 and there was a conversation beforehand at his home. The court does not consider his testimony to be impartial and without bias, for besides Mrs. Moerd being his mother-in-law it was shown that she gave him between $5,000 and $10,000 to help with *423 his purchase of a home. He testified that there was some kind of luggage but he could not tell what, if any, belonged to the decedent, and the substance of the conversation he testified to was the following: “ Well, that she was glad to go to St. Croix and stay there and be close to Mrs. Moerd. ’ ’ There was no other proof as to her future or permanent intentions. Certainly Mrs. Marshall would not be expected to say anything different to a stranger in that brief conversation or in the circumstances. This has no weight, in the opinion of the court, to show an intention of the decedent to effect a change of domicile from Nassau County to St. Croix.
Testimony that the birthplace of the decedent was Brooklyn, New York, was stricken out. Her age was given as approximately 87. Presumably, New York State was the domicile of origin and she was shown to have lived in Nassau County for upwards of 23 years before her trip to St. Croix and it was not shown that she knew anything about St. Croix before that trip. The domicile of origin continues until it is clearly shown to have been changed (Matter of Lydig, 191 App. Div. 117) and there must be definite intention shown to effect a change of domicile (Matter of Shapiro, 36 Misc 2d 271, affd. 18 A D 2d 837). “ The burden of proof rests upon the party who alleges a change ” (Matter of Newcomb, 192 N. Y. 238, 250; Matter of Lippert, 24 Misc 2d 81). Intention “ is always a distinct and material fact to be established ” (Matter of Newcomb, supra, p. 251) and this burden must be met by a fair preponderance of the evidence (Matter of Schomers, 23 Misc 2d 282). It appears from the authorities that the burden of proof was upon the respondent and in the absence of clear, credible evidence showing an intention on the part of the decedent to effect a change in domicile, her move to St. Croix, even though she stayed there for 33 months, would not effect such a change in domicile, under the circumstances shown.
The decedent had personal property in this county and had left the instrument which she believed to be her will with her attorney here in Nassau County for safekeeping. Accordingly, even if the decedent was not domiciled here at the time of death, this court clearly would have jurisdiction to probate the will under SOPA 206 (subd. 2). The conclusion of the court, on the proof submitted, is that the decedent’s visit to St. Croix with Mrs. Moerd was intended by her as nothing more than a visit with no intention of making St. Croix her permanent residence. The court therefore assumes domiciliary jurisdiction over the estate as well as over the parties before it pursuant to SOPA 206 (subd. 1) as well as SCPA 201 and 203.
*424 During the pendency of this proceeding, the petitioner requested this court to issue an injunction to restrain any further proceedings by Mrs. Moerd in the Federal District Court of the Virgin Islands. She has admittedly commenced probate proceedings there but her attorney here stated that the grandson is a necessary party but has not been served with any process issued by the Virgin Islands court. He urges that State courts have no jurisdiction over Federal courts and cites as authority Beardslee v. Ingraham (183 N. Y. 411). That case involved an attempt to restrain a sale under a Federal Circuit Court attachment and has no application here, for the requested relief is an injunction not against the Virgin Islands court but against the respondent, Mrs. Moerd, and her attorneys and agents. This court notes, incidentally, that the District Court in St. Croix is a Federal court with a Judge appointed by the President of the United States for a term of eight years (Revised Organic Act of the Virgin Islands, 68 U. S. Stat. 497). That court apparently has dual capacity as a territorial or “ state ” court and as a United States (Federal) District Court. This court has no doubt that the District Court in St. Croix has full jurisdiction over probate proceedings there but Irma Kalvet Moerd, having been duly served with citation and having appeared in this court by her attorney, is also subject to the jurisdiction of this court insofar as the decedent’s affairs are concerned and the question of the decedent’s domicile.
“It is settled law that an ex parte adjudication upon the domicile of a decedent made in a probate proceeding has no probative force outside the State in which it is made, and is not conclusive on the courts of another State under the full faith and credit clause of the Federal Constitution. (Overby v. Gordon, 177 U. S. 214; Thorman v. Frame, 176 id. 350; Matter of Horton, 217 N. Y. 363; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 487.) ” (Matter of Curtiss, 140 Misc. 185, 187.) Without jurisdiction over the distributee (s) of the decedent, any decree of the Virgin Islands court would therefore be ex parte and not conclusive here.
The injunction sought is accordingly granted and the respondent, her attorneys and agents are hereby restrained from taking any further proceedings in the District Court at St. Croix, Virgin Islands, for the probate of any instrument as the last will and testament of the decedent, pending the final determination of this court as to the force and effect of the instrument in question.
Counsel for the petitioner argued that the respondent has conceded the invalidity of the instrument as a will. This is based on the fact that the answer filed did not controvert the *425 allegations of the petition in that respect. With this argument the court does not agree and nothing contained in this decision should be construed as passing upon that issue for the respondent may interpose a complete answer and may also offer the instrument for probate in this court. At the appropriate time, the court will conduct whatever trial is necessary to ascertain the force and effect of the instrument.