Diana Unanue, Appellant, v Richard Unanue, Respondent.

Second Department, September 26, 1988

APPEARANCES OF COUNSEL

*Bender, Bodnar & Frucco (Harvey G. Landau* and *Syliva Fabriani* of counsel), for appellant.

*William S. Beslow* for respondent.

**OPINION OF THE COURT**

RUBIN, J.

The instant appeal presents this court with the opportunity to clarify the durational residence requirements set forth in Domestic Relations Law § 230.

I

The plaintiff and the defendant were married in Illinois in 1966. After residing in Illinois, New York and England, the parties returned to New York in 1976. It is undisputed that the parties resided as husband and wife in Scarsdale, New York, for a 10-year period from 1976 until September of 1986. In September 1986, the parties sold their marital residence in Scarsdale because the defendant wanted to use the equity in the house to raise money for a financial venture. When the parties were unable to locate another house in Scarsdale, to either rent or purchase, they rented a house in Connecticut until January 4, 1987. During this interim period, the plaintiff's continuing search for a house in Scarsdale proved successful and on November 19, 1986, the parties executed a contract for the purchase of a house in Scarsdale. However, on December 11, 1986, the defendant left the plaintiff and their children and temporarily moved to Bogota, Colombia. In a handwritten note, the defendant explained that his departure was attributable to a fruitless attempt over the past five years to reconcile the parties' marital difficulties. Thereafter, the plaintiff closed title to the house the parties had contracted to purchase in Scarsdale, in her own name, and moved into the premises with her children on January 5, 1987. During the approximately 3⅓-month period when the parties temporarily

dwelled in Connecticut, their son continued to attend Scarsdale High School and their daughter was enrolled in the Dobbs Ferry Master's School. Both the plaintiff and the defendant maintained their New York bank accounts, driver licenses and voter registrations.

■ On January 30, 1987, the plaintiff commenced the instant action for divorce and ancillary relief by serving process on the defendant in Bogota, Colombia. Thereafter, the plaintiff moved, *inter alia*, for temporary restraining orders and pendente lite relief. The defendant cross-moved to dismiss the action on the grounds of noncompliance with the residence requirements of Domestic Relations Law § 230 and the existence of a prior pending divorce action between the parties. Since the plaintiff and the defendant dwelled in Connecticut between September 26, 1986, and January 5, 1987, and neither maintained a residence in New York during that period, the Supreme Court granted the defendant's cross motion to dismiss upon finding that neither party fulfilled the residence requirements of Domestic Relations Law § 230 (5). In view of the dismissal of the plaintiff's action for divorce, the court denied her respective applications. We disagree with the Supreme Court's interpretation of Domestic Relations Law § 230 and find the residency requirement of subdivision (2) has been satisfied.

## II

Domestic Relations Law § 230 provides that an action for divorce may be maintained only when:

"1. The parties were married in the state and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding, or

"2. The parties have resided in this state as husband and wife and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding, or

"3. The cause occurred in the state and either party has been a resident thereof for a continuous period of at least one year immediately preceding the commencement of the action, or

"4. The cause occurred in the state and both parties are residents thereof at the time of the commencement of the action, or

"5. Either party has been a resident of the state for a continuous period of at least two years immediately preceding the commencement of the action".

The durational residence requirements imposed by Domestic Relations Law § 230 are in addition to the constitutional and statutory mandates that the court have a proper basis for exercising in rem jurisdiction to adjudicate the question of marital status (see, CPLR 314 [1]) and personal jurisdiction to adjudicate the economic rights of domiciliary and nondomiciliary spouses (see, CPLR 301, 302 [b]; see generally, Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C230:1, at 24). The durational residence requirements imposed by Domestic Relations Law § 230 were enacted as part of the 1966 Divorce Reform Act, which liberalized the grounds for divorce. These requirements were evidently added to prevent the courts of this State from becoming "divorce mills" (see, Lacks v Lacks, 41 NY2d 71, 74, rearg denied 41 NY2d 901). Concerned that spouses with no real connection to New York would flock here for the sole purpose of obtaining marital relief unavailable in the States that had substantial interests in the marital relationship, the Legislature imposed the durational residence requirements to deter such conduct and to " 'ensure against use of our courts in matrimonial proceedings by outsiders' " (11 Zett-Edmonds-Schwarz, NY Civ Prac § 3.08, at 3-25, quoting from 1966 Report of Joint Legis Commn on Matrimonial and Family Law [1966 NY Legis Doc No. 8], at 103, 104; see also, Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C230:1, at 24). The durational residency requirements are not a limitation upon the subject matter jurisdiction of the Supreme Court, but are merely "substantive elements" of the matrimonial cause of action, which the plaintiff must allege and prove (see, Lacks v Lacks, supra, at 77).

The greater weight of authority construes the term "residence" as used in Domestic Relations Law § 230 to be synonymous with the term "domicile", so that the durational residency requirements are not satisfied by the mere bodily presence of parties within the State, no matter for how long a period (see, Silvers v Silvers, 57 AD2d 948; Lacks v Lacks, 50 AD2d 785, affd 41 NY2d 71, supra; Pierce v Pierce, 50 AD2d 867; Usher v Usher, 41 AD2d 368; Geiser v Geiser, 102 Misc 2d 862; Werner v Werner, 101 Misc 2d 414; Delvaille v Delvaille, 87 Misc 2d 726; Cocron v Cocron, 84 Misc 2d 335; see also,

*Clapp v Clapp,* 272 App Div 378 [construing Civ Prac Act § 1147, a prior statutory provision regarding residency requirements for maintenance of divorce action]; *contra, Capdevilla v Capdevilla,* NYLJ, Mar. 25, 1988, at 13, col 2; *Small v Small,* 96 Misc 2d 469, 473; *Langlais v Langlais,* 90 Misc 2d 29). Ordinarily, to constitute a domicile of choice, there must be physical presence and the requisite *intention* to make the locality one's fixed and permanent home *(see,* discussion in 1 Foster, Freed and Brandes, Law and the Family New York § 5:11 [2d ed]).

It is noteworthy that the bulk of cases which hold that the durational residency requirements may only be fulfilled by proof that a party was continuously domiciled in New York for the applicable duration of time specified in Domestic Relations Law § 230 were decided *prior* to the 1976 amendments to Domestic Relations Law §§ 61 and 231, which eliminated the preferential rights accorded the husband by common law in the selection of a domicile.

Under the common law, a woman upon marriage was deemed, by operation of the law, to take the domicile of her husband. The husband had the right to select the place of abode of the family and it was the duty of the wife to abide by the husband's decision unless it was unsafe or imprudent for her to do so. Thus, the legal domicile of the wife was prima facie that of her husband *(see, Matter of Daggett,* 255 NY 243, 246-247; *Usher v Usher,* 41 AD2d 368) and, unless there was justification or excuse for leaving her husband, a married woman could not acquire a separate domicile whenever she so elected *(Matter of Daggett, supra,* at 246-247; *Gray v Gray,* 143 NY 354, 359; *Hunt v Hunt,* 72 NY 217, 242-243). Prior to the 1976 amendments, Domestic Relations Law former § 231 provided that "[i]f a married woman dwells within the state when she commences an action against her husband for divorce, annulment or separation, she is deemed a resident thereof, although her husband resides elsewhere." Domestic Relations Law former § 231 and its predecessor statute *(see,* Civ Prac Act § 1166) were initially enacted to modify the common-law rule that the legal domicile of the wife is prima facie that of her husband and to prevent a husband from avoiding an action for divorce commenced by the wife in New York by residing outside the State and claiming under the common-law rule that the wife was not a domiciliary or resident of New York *(see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 231, at

39; 1 Foster, Freed and Brandes, Law and the Family New York § 5:12 [2d ed]; *Brown v Brown,* 55 Misc 2d 174, 176; *Boessenkool v Boessenkool,* 42 Misc 2d 945, 946 [Domestic Relations Law former § 231]; *Taubenfeld v Taubenfeld,* 276 App Div 873, *rearg and lv denied* 276 App Div 918 [Civ Prac Act § 1166]). It is also noteworthy that the predecessor statutes were enacted when a divorce action could be maintained in this State without having to satisfy a durational residency requirement *(see,* Domestic Relations Law former § 230, *and* former Civ Prac Act § 1147). After Domestic Relations Law § 230 was amended as part of the 1966 Divorce Reform Act to add durational residency requirements for maintaining a divorce action, Domestic Relations Law § 231 was interpreted as not obviating compliance with these durational residency requirements, which, in turn, were construed as requiring proof of domicile for the applicable duration of time specified in Domestic Relations Law § 230 *(see, e.g., Cocron v Cocron,* 84 Misc 2d 335, *supra; see also,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 231, at 40).

Domestic Relations Law former § 61 (L 1929, ch 455, § 1) was also enacted to erode the common-law rule by providing that "[t]he domicile of a married woman shall be established by the same facts and rules of law as that of any other person for the purpose of voting and office-holding" *(see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 61, at 240). Nevertheless, the wife still could not establish a domicile of her own unless the husband had engaged in wrongful conduct, which had to be proved *(Cocron v Cocron,* 84 Misc 2d 335, *supra; see also,* 1 Foster, Freed and Brandes, Law and the Family New York § 5:12 [2d ed]).

In accordance with the more modern and changing attitudes of society toward women, which recognize that a wife has the same capacity to acquire a domicile of choice as does her husband *(see, Geiser v Geiser,* 102 Misc 2d 862, 865, *supra),* the Legislature, at the recommendation of the Law Revision Commission, amended Domestic Relations Law §§ 61 and 231 to eliminate distinctions predicated upon sex as to the acquisition of a domicile and residence of married persons. All vestiges of the discriminatory common-law rule were legislatively abrogated when Domestic Relations Law § 61 was amended to provide that "[t]he domicile of a married man or woman shall be established for all purposes without regard to

sex" (L 1976, ch 62, § 2). Cognizant that the term "residence" as used in section 230 had been equated with "domicile" and that the courts had required proof of a matrimonial litigant's continuous domicile in this State for the requisite time period in order to satisfy that section's durational residency requirements, the Law Revision Commission noted in its memorandum to the Legislature that by amending Domestic Relations Law § 61 to permit the domicile of any married person to be determined without regard to sex, Domestic Relations Law § 231 could be repealed as no longer relevant. However, the Law Revision Commission advised the Legislature to retain Domestic Relations Law § 231 and amend it to provide that "[i]f a married person dwells within the state when he or she commences an action against his or her spouse for divorce * * * such person is deemed a resident thereof, although his or her spouse resides elsewhere". The Commission recommended that such an amendment "would keep it clear that residency for purposes of bringing a matrimonial action does not mean the party *must prove* he or she is a domiciliary" *(see,* 1976 Report of NY Law Rev Commn [1976 NY Legis Doc No. 65 (A-6)], at 4 [emphasis added]). By adopting this recommendation and so amending Domestic Relations Law § 231, the Legislature evidenced an intention to liberalize the test for satisfying the durational residency requirements of Domestic Relations Law § 230 by permitting a matrimonial litigant to establish compliance by proffering proof that the party dwelled within this State for the prescribed time periods set forth in Domestic Relations Law § 230. As a general rule, proof of dwelling continuously within New York for the prescribed duration is a less stringent test to satisfy than proof of being a continuous domiciliary of this State for the requisite period because the latter requires evidence establishing the additional element of an intention to make this State one's permanent home.

Although there are decisions rendered after the 1976 amendments that continue to adhere to the traditional view that domicile is the sole criterion in determining compliance with Domestic Relations Law § 230 *(see, Geiser v Geiser,* 102 Misc 2d 862, *supra; Werner v Werner,* 101 Misc 2d 414, *supra),* some courts in response to the 1976 amendments have taken a more liberal approach and declined to equate residency as used in Domestic Relations Law § 230 with domicile *(see, Capdevilla v Capdevilla, supra; Small v Small, supra; Langlais v Langlais, supra).* Adhering to the literal definition of

residence, which requires only bodily presence as an inhabitant of a place (see, Black's Law Dictionary 1473 [4th ed]), these courts have concluded that proof of dwelling continuously within New York State for the requisite time period fulfills the durational residency requirements for maintaining a matrimonial action. Although we concur with the more liberal view that such proof will satisfy the durational residency requirements of Domestic Relations Law § 230, we disagree to the extent these decisions hold that one's durational physical residence in this State is the "sole barometer" or test for determining compliance with Domestic Relations Law § 230 (see, Capdevilla v Capdevilla, supra).

An examination of the 1976 amendments to Domestic Relations Law §§ 231 and 61 discloses an intention to provide an alternative means, aside from proof of domicile, for complying with the durational residency requirements of Domestic Relations Law § 230, but not an intention to bar a domiciliary of this State, who has been continuously domiciled here for the requisite durational period, from maintaining a divorce action.

Usually, durational residency requirements, as here, are an attempt by the State to regulate the availability of divorces to persons who have minimal ties with the State; their enactment is justified as an exercise by the State of its prerogative of overseeing the institution of marriage (Annotation, Validity of Statute Imposing Durational Residency Requirements for Divorce Applicants, 57 ALR3d 221). An interpretation of the durational residency requirements of Domestic Relations Law § 230 that would permit a class of persons who have continuously dwelled within this State for the prescribed duration access to the courts for the purpose of terminating their marital status, but deny access to a class of persons who have been continuously domiciled in New York for the requisite duration would subject Domestic Relations Law § 230 to attack as violative of equal protection. No compelling State interest can be discerned for justifying a durational residency requirement which bars access to the courts for the purpose of terminating a marriage to a segment of the population having substantial contacts with New York, such as New York domiciliaries, who have continued such status for the applicable duration of time. Accordingly, we conclude that the durational residency requirements may be satisfied by either the traditional method of proving that a party has been domiciled or, in the alternative, has resided in New York State for the

continuous period of time specified in the applicable subdivision of Domestic Relations Law § 230.

Plaintiffs who seek to demonstrate compliance with the durational residency requirements by establishing their continuous domiciliary status for the requisite duration will have the advantage of the traditional rule that domicile, once established, is presumed to continue *(Matter of Newcomb,* 192 NY 238, 250; *Delvaille v Delvaille,* 87 Misc 2d 726, 728, *supra; Cocron v Cocron,* 84 Misc 2d 335, 345, *supra; Matter of Marshall,* 57 Misc 2d 419, 423; *Ruderman v Ruderman,* 193 Misc 85, *affd* 275 App Div 834). Where the evidence establishes the existence of a New York domicile, the burden of proving a change of domicile is on the party asserting such a change *(see, Silvers v Silvers,* 57 AD2d 948, *supra; Capdevilla v Capdevilla, supra).* However, the presumption of continuance is not applicable when a plaintiff seeks to satisfy the durational residency requirements with proof of residing, i.e., dwelling, within this State for the requisite duration, because a party can change a residence without necessarily changing his or her place of domicile *(see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C230:3, at 29). Furthermore, a determination of the question of whether a party continuously dwelled in this State for the applicable duration will be governed by objective fact findings as to where the party physically lived, whereas a determination of domicile is controlled by the subjective intent of the party whenever the party moves.

Upon a review of the instant record, we find that the plaintiff has established compliance with the durational residency requirements of Domestic Relations Law § 230 (2), which provides that an action for divorce may be maintained when "[t]he parties have resided in this state as husband and wife and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding" the commencement of the action.

Initially we note that in view of the fact the plaintiff resided for approximately 3⅓ months in Connecticut within the one-year period immediately preceding the commencement of her action for divorce, she was precluded from satisfying the durational residency requirements of Domestic Relations Law § 230 (2) by proof of continuous residence within New York for the prescribed time period. However, that fact alone does not foreclose the plaintiff from demonstrating compliance by proof

that she was continuously domiciled in New York for one year immediately preceding the commencement of her action for divorce.

Here, the plaintiff proffered evidence that for a 10-year period preceding the parties' move to Connecticut, she and the defendant were domiciled in New York as man and wife. Since an existing domicile is presumed to continue, the burden was on the defendant to prove that the domicile changed to Connecticut upon the parties' move to that State. Furthermore, once a domicile is established in New York, it is not lost by temporary absences from the State, provided there is a corresponding intention to retain New York as one's domicile *(Clapp v Clapp, supra; Cocron v Cocron, supra)*. When undertaking to determine an issue of domicile, evidence of the following circumstances is relevant: a place of residence in the State of alleged domicile; length of time of residence, location of schools attended by children; leasing, buying, negotiating for or building a home; declarations, oral or written, made at time of, or in connection with, a move which shows intent that a residence shall be permanent; place of worship and club memberships; place of performance of civic duties, such as voting, jury duty, payment of personal income taxes; place of bank account; jurisdiction where automobile is registered; and the State of issuance of a driver's license *(see,* Annotation, *Validity of Statute Imposing Durational Residency Requirements for Divorce Applicants,* 57 ALR3d 221, § 2 [b]).

In this case, there is inadequate evidence manifesting an absolute and fixed intention on the part of either the plaintiff or the defendant of abandoning New York State as their permanent home and making Connecticut their new domicile. The sale of the marital residence in Scarsdale does not alone signify a clear intent to shift domicile *(see, Paparella v Paparella,* 74 AD2d 106, 107 [concurring opn of Moule, J.]; *Pierce v Pierce,* 50 AD2d 867, *supra)*. The record shows that the parties' decision to move to Connecticut was a temporary one necessitated by their unsuccessful attempts to locate suitable housing in Scarsdale immediately after the sale of their marital home to raise money for a business venture, apparently unrelated to Connecticut. The parties' intention not to abandon New York as their domicile was evidenced by the execution of a contract for the purchase of a house in Scarsdale within a month after dwelling in a rented house in Connecticut; the retention of their New York voter's registrations, driver's licenses and bank accounts; and their children's

continued attendance in New York schools. When the defendant left the temporary dwelling in Connecticut due to marital discord, the plaintiff closed title, in her own name, on the Scarsdale house and returned to New York to permanently reside there with the children. Under the circumstances of this case, we find that (1) the last marital domicile of the parties was New York, where they resided as husband and wife for over 10 years, (2) the plaintiff was a domiciliary of New York when the action was commenced, and (3) the plaintiff was a domiciliary of this State for a continuous period of one year immediately preceding the commencement of this suit, in compliance with Domestic Relations Law § 230 (2). At the time of commencement of this action, there was no other State, aside from New York, with a substantial interest in the marital status of the parties. Keeping in mind that the durational residency requirements were enacted to preclude the use of our courts in matrimonial proceedings by spouses with no real ties with New York, who would flock here for the sole purpose of obtaining matrimonial relief unavailable in States that had substantial interests in the marital relationship, it is clear that the plaintiff does not fall within this class of spouses. Accordingly, the Supreme Court erred in its dismissal of the complaint on the ground of noncompliance with the durational residency requirements of Domestic Relations Law § 230.

### III

■ Lastly, we reject the defendant's additional contentions that this divorce action should be dismissed on the ground there is another divorce action pending between the parties, which was commenced in 1981, and that the plaintiff is precluded from requesting pendente lite relief due to the terms of a separation agreement executed by the parties in 1981. A review of the record indicates that the prior divorce action was abandoned by the parties shortly after its commencement (see, McKean v McKean, 100 AD2d 537; Dunn v Dunn, 86 AD2d 772, appeal dismissed 56 NY2d 591) and the separation agreement was terminated by their five-year reconciliation and cohabitation (Matter of Wilson, 50 NY2d 59; Zimtbaum v Zimtbaum, 246 App Div 778, affd 272 NY 416).

For the aforenoted reasons, the judgment is reversed, on the law and the facts, with costs, and the matter is remitted to the Supreme Court, Westchester County, for further proceed-

ings, including a determination of the plaintiff's respective motions for restraining orders and pendente lite relief.

MANGANO, J. P., LAWRENCE and WEINSTEIN, JJ., concur.

Ordered that the judgment is reversed, on the law and the facts, with costs, the defendant's cross motion to dismiss the complaint is denied, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith.