[1 NYS3d 917]

Melita Stancil, Plaintiff, v Jimmy Stancil, Defendant.

Supreme Court, New York County, February 17, 2015

APPEARANCES OF COUNSEL

*Amatullah K. Booth*, New York City, for plaintiff.
*Jimmy Stancil*, defendant pro se.

## OPINION OF THE COURT

MATTHEW F. COOPER, J.

New York, like all other states, has residency requirements for parties seeking to commence a divorce. These requirements exist to ensure that plaintiffs cannot simply choose the state with the most beneficial laws, move to that state and immediately file suit. Specifically, New York mandates that either the plaintiff or the defendant in a matrimonial action live in this state continuously for two years, or continuously for one year if certain other conditions are present. One such condition is if "[t]he cause occurred in the state." (Domestic Relations Law § 230 [3].)

The threshold question before this court, raised in the defendant husband's opposition to the plaintiff wife's motion for pendente lite relief, is whether New York's recently enacted no-fault divorce statute creates a "cause" that would reduce a party's residency requirement from two years to one. Defendant, a resident of Virginia, objects to the divorce being heard in New York when plaintiff only lived here for 14 months prior to its commencement. Plaintiff asserts that the case can proceed here because the ground upon which she seeks the divorce—the irretrievable breakdown of the marriage—is a "cause [that] occurred in the state." (*Id.*)

### Facts

The parties were married in 1998 in Norfolk, Virginia. Shortly thereafter defendant, who was a member of the United States Navy, was deployed for six months. They then moved to Florida for two years, during which time plaintiff gave birth to the parties' only child. In 2001, defendant was deployed to Japan, and plaintiff and the child relocated to South Carolina, where plaintiff's family resides. Defendant returned to the United States in 2003 and was stationed in Norfolk, Virginia. Plaintiff contends she wanted to move to Virginia to live with defendant, but defendant refused to help her relocate, stating he needed to focus on his career and that plaintiff should focus on her education.

In 2006, plaintiff enrolled in a graduate program at the University of South Carolina. That year, with defendant still stationed in Virginia, the parties jointly purchased a home in Columbia, South Carolina. During this period, plaintiff alleges that the parties visited one another in Virginia and South Carolina, or would meet in North Carolina.

Defendant retired from the Navy in 2010. While he continued to visit plaintiff in South Carolina, he maintained his home in Virginia. Plaintiff's papers describe a two-month period in late 2010 when defendant stayed with plaintiff in South Carolina, but after a dispute, defendant stayed with plaintiff's parents for another two months. In January 2011, defendant returned to Virginia and began a new job in the Norfolk Sheriff's Department.

In February 2013, plaintiff, who was still in graduate school studying clinical psychology, accepted an internship at St. Luke's Roosevelt Hospital in New York. She moved to New York with the child in June 2013, having rented out the South Carolina residence. It does not appear that defendant has ever visited plaintiff or the child in New York.

In August 2014, 14 months after moving to New York, plaintiff commenced this action using New York's no-fault divorce ground. Thereafter, plaintiff brought an order to show cause for temporary custody, child support and maintenance. In his opposition, defendant, who is self-represented and travels by bus from Virginia for court appearances, claims that the parties cannot divorce in New York because they do not meet New York's residency requirement.

## Discussion

Enacted in 1966 as part of New York's Divorce Reform Act, durational residency requirements were established "to preclude the use of our courts in matrimonial proceedings by spouses with no real ties with New York, who would flock here for the sole purpose of obtaining matrimonial relief unavailable in States that had substantial interests in the marital relationship" (*Unanue v Unanue*, 141 AD2d 31, 41 [1st Dept 1988]). Domestic Relations Law § 230 sets forth the state's residency requirements as follows:

> "An action . . . for divorce or separation may be maintained only when:
> "1. The parties were married in the state and either party is a resident thereof when the action is

commenced and has been a resident for a continuous period of one year immediately preceding, or

"2. The parties have resided in this state as husband and wife and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding, or

"3. The cause occurred in the state and either party has been a resident thereof for a continuous period of at least one year immediately preceding the commencement of the action, or

"4. The cause occurred in the state and both parties are residents thereof at the time of the commencement of the action, or

"5. Either party has been a resident of the state for a continuous period of at least two years immediately preceding the commencement of the action."

Plaintiff claims to satisfy the residency requirement in subdivision (3); she does not argue that any other subdivision is applicable.

In 2010, New York adopted no-fault divorce by adding a ground to the existing six, four of which are fault-based—cruel and inhuman treatment, abandonment for a period of one year or more, adultery, incarceration of defendant for a period of three years or more—and two of which require waiting periods—separation for one year pursuant to judgment and agreement—to which both parties must agree (Domestic Relations Law § 170 [1]-[6]). The no-fault provision allows for a divorce action to be maintained when "[t]he relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath" (Domestic Relations Law § 170 [7]).

Plaintiff contends that pursuant to New York's no-fault divorce provision the parties' marriage has been irretrievably broken for a period of six months or more and that the "breakdown" occurred in New York, thereby meeting the requirements of Domestic Relations Law § 230 (3). Thus, this court is presented—in a case of first impression—with a difficult question: did the legislature intend Domestic Relations Law § 170 (7) to amount to a "cause" for the purpose of the residency requirement set forth in Domestic Relations Law § 230 (3)?

The legislature's primary concern in enacting no-fault divorce was to "provide estranged couples a simple and incontestable basis for ending their marriage, and avoid the squabbling over issues that flow from the other objective grounds in DRL § 170" (*Palermo v Palermo*, 35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *4 [Sup Ct, Monroe County 2011]). Unfortunately, perhaps in its eagerness to provide relief to divorcing New Yorkers, the legislature did not comprehensively consider how this new provision would interact with other language in the Domestic Relations Law. For instance, courts were subsequently called upon to resolve the contradiction between Domestic Relations Law § 170 (7), providing that a sworn statement of plaintiff sufficed to resolve the issue of grounds, with Domestic Relations Law § 173, which confers a right to trial in divorce actions (*see e.g. Trbovich v Trbovich*, 122 AD3d 1381 [4th Dept 2014]; *Hoffer-Adou v Adou*, 121 AD3d 618 [1st Dept 2014]; *Alvarado v Alvarado*, 45 Misc 3d 412 [Sup Ct, Richmond County 2014]; *Filstein v Bromberg*, 36 Misc 3d 404 [Sup Ct, NY County 2012]; *Townes v Coker*, 35 Misc 3d 543 [Sup Ct, Nassau County 2012]; *Palermo*, 35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U]; *Schiffer v Schiffer*, 33 Misc 3d 795 [Sup Ct, Dutchess County 2011]; *A.C. v D.R.*, 32 Misc 3d 293 [Sup Ct, Nassau County 2011]). While different courts have come to different conclusions, the majority, consistent with the legislature's intent, have determined that the no-fault provision obviated the need for grounds trials. In *Palermo*, for example, the Supreme Court of Monroe County, after a lengthy and thorough review of legislative history, a comparison of other states' no-fault divorce statutes, and an analysis of case law, found that the legislature's silence on the issue of no-fault grounds trials meant it did not intend to allow them, stating,

> "If the New York legislature intended to have hearings and trials regarding the veracity of a sworn statement indicating that a marriage is irretrievably broken, it would have followed the countless examples of other states and included the hearing requirement in its legislative mandate. It chose not to do so, and this court will not, under the guise of statutory construction, amend or overrule the legislature's efforts. To do so would thwart DRL § 170(7)'s purpose." (35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *14.)

Similarly, courts were compelled to clarify the inconsistency between Domestic Relations Law § 170 (7) and CPLR 3016 (c),

which requires that "[i]n an action for separation or divorce, the nature and circumstances of a party's alleged misconduct, if any, and the time and place of each act complained of, if any, shall be specified in the complaint" (*see e.g. Tuper v Tuper*, 98 AD3d 55 [4th Dept 2012]; *Vahey v Vahey,* 35 Misc 3d 691 [Sup Ct, Nassau County 2012]; *Strack v Strack,* 31 Misc 3d 258 [Sup Ct, Essex County 2011]). And similar to the majority of courts on the issue of grounds trials, all of these courts held that extensive pleadings were not required in cases brought pursuant to Domestic Relations Law § 170 (7) (*Tuper*, 98 AD3d at 57 ["Because a cause of action for divorce under Domestic Relations Law § 170 (7) does not require a showing of any 'misconduct' by either party, the requirements of CPLR 3016 (c) are inapplicable"]).

Courts have also been made to wrestle with Domestic Relations Law § 210 (a) in the wake of the legislature implementing no-fault divorce. Section 210 (a) imposes a statute of limitations on divorce actions premised upon acts that took place more than five years before the date of commencement of the action. However, it specifically makes an exception for Domestic Relations Law § 170 (2) (abandonment), (4) (adultery), (5) (separation pursuant to judgment), and (6) (separation pursuant to agreement). Because the legislature failed to amend Domestic Relations Law § 210 to include section 170 (7) in the list of excepted grounds, the statute can be interpreted as preventing divorce in cases where parties' marriages have been effectively dead for many years. This making little sense, courts have justified work-arounds in various ways. In *Palermo*, the court simply found that the cause of action arises when the plaintiff gives his or her sworn statement (35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *12). In *Tuper*, the Appellate Division, Fourth Department wrote:

> "In our view, a cause of action for divorce under the no-fault statute should be treated similarly to a cause of action for divorce based upon imprisonment of a spouse, which is also governed by the five-year statute of limitations set forth in section 210. In *Covington v Walker* (3 NY3d 287, 291 [2004]), the Court of Appeals held that a cause of action for divorce based on imprisonment 'continues to arise anew for statute of limitations purposes on each day the defendant spouse remains in prison for "three or more consecutive years" until the defendant is released.' Like a spouse serving a life

sentence, an irretrievable breakdown in a married couple's relationship is a continuing state of affairs that, by definition, will not change. After all, the breakdown is 'irretrievable.' It thus stands to reason that a cause of action under the no-fault statute may be commenced at any time after the marriage has been 'broken down irretrievably for a period of at least six months.' " (98 AD3d at 58 [citations omitted].)

This body of case law makes clear that the legislature did not reconcile its new divorce ground with other portions of the Domestic Relations Law and CPLR. Now, this court is tasked with resolving yet another conflict between section 170 (7) and a Domestic Relations Law provision, in this case Domestic Relations Law § 230 (3). In doing so, the court must arrive at one of two conclusions: either the no-fault ground constitutes a "cause" for the purposes of section 230 (3), thereby enabling anyone living in New York for one year to obtain a divorce; or parties divorcing pursuant to section 170 (7) are unable to use Domestic Relations Law § 230 (3) and benefit from a reduced residency requirement. In either case, the statutes as written offer little guidance.

When interpreting a statute, a court's chief concern must be the legislature's intent (*Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]). The statutory language itself is "the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). Plaintiff argues that Domestic Relations Law § 230 (3) clearly and unambiguously requires that plaintiff "live in New York for a year or more and the cause of action or ground alleged arose in New York" (plaintiff's supp mem of law at 7). She contends there is nothing in the text that can be construed as excluding the no-fault ground from this subdivision, stating, "If the legislature intended for such a restriction to exist, it would have [included] such language and enact[ed] such a statute" (*id.*). Significantly, section 230 (3) does not contain, as plaintiff contends, the words "cause of action" or "ground" for divorce, it simply says "[t]he *cause* occurred in the state" (emphasis added). In this context, a "cause" must be an event which resulted in plaintiff deciding to file for divorce. Indeed, the fault grounds—abandonment, cruel and inhuman treatment, adultery, incarceration—inherently describe specific acts

that occur at a particular time and place. For example, it is possible to concretely envision one spouse abandoning the other on a certain date in New York. It is equally possible to envision cruel and inhuman acts, acts constituting adultery, or incarceration occurring in New York.

Conversely however, consistent with the primary purpose of enacting a truly "no-fault" divorce ground, the obligation to allege the cause of a marriage's demise is simply not present (*see Tuper*, 98 AD3d at 57 [noting that Domestic Relations Law § 170 (7) "does not require a showing of any 'misconduct' by either party"]; *Palermo*, 35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *13 ["New York's legislature has enacted in DRL § 170(7) a true 'no-fault' divorce law which does not require proof of any fault . . . New York's legislature allows one partner to end a marriage and permits that partner to do so without having to justify their decision by alleging intolerable conduct—or misconduct or any conduct—by the other party"]). Even in *Strack*, which held the increasingly minority viewpoint that Domestic Relations Law § 170 (7) allows for grounds trials, the court states: "whether a marriage is . . . irretrievable need not necessarily be viewed by both parties," that it can still be broken down "even though one of the parties continues to believe that the breakdown is not irretrievable and/or that there is still some possibility of reconciliation" (*Strack*, 31 Misc 3d at 263; *see also Palermo*, 35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *7). Unlike an act of adultery or abandonment, which objectively occurs at a specific time and place, an irretrievable breakdown is in the eye of the beholder, a subjective state of mind (*see Tuper*, 98 AD3d at 58 [questioning whether the day a marriage broke down irretrievably "could even be pinpointed"]; *Palermo*, 35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *10, quoting *In re Marriage of Walton*, 28 Cal App 3d 108, 117, 104 Cal Rptr 472, 479 [1972] [in determining that a marriage has broken down, a court must necessarily "depend to a considerable extent upon the subjective state of mind of the parties"]). From the plain meaning of Domestic Relations Law § 230 (3), which simply says "cause" rather than "cause of action" or "grounds for divorce," the legislature was referring to a specific act or acts which must be pleaded. Based on the plain meaning of Domestic Relations Law § 170 (7) and the case law interpreting it, irretrievable breakdown is not a specific act.

Of course, when it enacted Domestic Relations Law § 230 in 1966, the legislature most likely did not consider the possibil-

ity of a divorce action in which there was no cause at all. Thus, it is important to consider how the legislative history of Domestic Relations Law § 170 (7) bears on the question before the court. As discussed above, the legislature's primary concern in 2010 was to remove a focus on bad acts from divorce proceedings. Nevertheless, the legislature clearly intended that other aspects of the Domestic Relations Law remain intact. For instance, it could have repealed the fault grounds entirely, but it did not (see Palermo, 35 Misc 3d 1211[A], 2011 NY Slip Op 52506[U], *14-15 ["The legislature, vested with the power to decide the basis for divorce, can add a new ground and repeal others or, as it did here, add a new ground and leave the fault-based grounds in place, permitting people to decide which ground or cause of action best suits them"]). Specifically, at the New York Assembly debate, the bill's sponsor, Assembly Member Jonathan Bing, stated multiple times that "[the] legislation does not take away any grounds or any procedural maneuver or anything that currently exists under the law" (Tuper, 98 AD3d at 59 n, citing NY Assembly Debate on Assembly Bill A9753-A, July 1, 2010 at 231, 237]).

To interpret the no-fault ground as a "cause" for purposes of invoking the one-year residency requirement provided by Domestic Relations Law § 230 (3) would seem to contradict the legislature's stated intention of keeping other "procedural maneuvers" in effect. Indeed, the impact would be vast. Since Domestic Relations Law § 170 (7) was enacted in 2010, this court has observed that nearly all divorce actions—contested and uncontested alike—are commenced using the new ground, even though the other six grounds remain on the books. This reality reinforces the reasons the legislature enacted the law in the first place; divorces are messy, acrimonious and protracted enough for the many couples who must resolve issues of custody, support and equitable distribution in order to move on with their lives. Given the choice between a grounds trial—assuming a couple's reasons for divorcing even fit into one of the fault categories—and a sworn affidavit subjectively satisfying grounds, litigants are overwhelmingly choosing the latter. Accordingly, if almost every divorce is commenced using section 170 (7), and if irretrievable breakdown of the marriage could be construed as a specific act or "cause" under section 230 (3), then Domestic Relations Law § 230 (5), which now sets the prevailing standard of two years, would be rendered obsolete and the residency requirement would effectively be reduced to one year.

Gutting section 230 by making one year, rather than two years, the required duration for residency when only one party lives in New York would not further the statute's purpose. Residency requirements ensure that litigants who divorce in New York have connections to the state sufficient to avail themselves of our laws and prevent those "who would flock here for the sole purpose of obtaining matrimonial relief unavailable in States that had substantial interests in the marital relationship" (*Unanue*, 141 AD2d at 41). The requirements also ensure that defendants are not burdened with travelling to distant states to litigate where the plaintiff has an insignificant state connection.

In this case, plaintiff's ties to New York, while not necessarily insignificant, are less than substantial. Plaintiff appears to have primarily moved to New York to participate in a graduate school internship, a program of limited duration. Defendant, on the other hand, has never lived here and has absolutely no connection to New York; his life is firmly rooted in Virginia.

It is not apparent whether plaintiff chose to file for divorce in New York rather than at some earlier point "for the sole purpose of obtaining matrimonial relief unavailable" in South Carolina or Virginia. Either way, it is contrary to the purpose of New York's no-fault statute to seek to determine when a marriage actually broke down. As previously discussed, Domestic Relations Law § 170 (7) requires only a sworn statement by plaintiff, and need not include supporting facts or evidence. Regardless, it is clear that South Carolina, where the marital home is located and where plaintiff is arguably domiciled, and Virginia, where the parties were married and where defendant is likely domiciled, have far more substantial interests in the marital relationship than New York does. After a review of the language and purpose of Domestic Relations Law § 230, the legislative history of Domestic Relations Law § 170 (7), and the case law resolving other inconsistencies that have arisen from the legislature's adopting section 170 (7), this court concludes that the legislature did not intend for the no-fault divorce ground to constitute a "cause" sufficient to satisfy the durational residency requirement in Domestic Relations Law § 230 (3).

Plaintiff's alternative arguments are equally unavailing. Defendant cannot be said to have waived his right to contest personal or subject matter jurisdiction because he failed to do so by motion, nor can it be said that the court improperly raised

this issue sua sponte. Although defendant, who is representing himself and has no legal training, may have raised the issue inartfully, he nevertheless consistently voiced his objection to plaintiff filing for divorce in New York as opposed to Virginia or South Carolina. Courts have clearly stated that the durational residency requirement is not akin to personal or subject matter jurisdiction, rather it is an additional barrier to a divorce being granted in this state (*Lacks v Lacks*, 41 NY2d 71 [1976]). Thus, the requirements of CPLR 3211 (a) (3) do not apply.

Plaintiff also contends that she satisfies the residency requirement because she is domiciled in New York. A party's domicile is only significant for purposes of Domestic Relations Law § 230 when he or she has not resided in New York continuously for the requisite period but nevertheless has remained a domiciliary of New York (*Black v Black*, 108 AD3d 842 [3d Dept 2013]). Here, plaintiff has neither resided nor been domiciled in New York for two years or more. Accordingly this argument lacks merit.

### Conclusion

Each year, matrimonial courts in this state assist thousands of unhappily married couples resolve the painfully difficult issues involving their children and the complicated issues involving their finances. It is never the goal to make the process more time-consuming and costly. The court readily admits that this decision may cause hardship for plaintiff, who may very well now have to commence two actions: a custody petition brought in either this court or a New York Family Court to determine nonfinancial issues concerning the child, who has lived here for more than the requisite six months (Domestic Relations Law § 76), and an action for divorce brought in South Carolina or Virginia, states which likely have the ability to grant plaintiff a divorce and determine all ancillary financial issues. The court is also aware that plaintiff will have to bear the cost of travel, as the defendant has so far, for so long as she interns at St. Luke's Roosevelt.

Justice Oliver Wendell Holmes, Jr. famously wrote "hard cases . . . make bad law" (*Northern Securities Co. v United States*, 193 US 197, 364 [1904 Holmes, J., dissenting]). Bearing that adage in mind, this court cannot make bad law simply to avoid hardship to plaintiff. In spite of the difficulties that she will encounter as a result of this divorce action being dismissed, permitting the case to go forward would be making a legal de-

termination that would render the two-year residency requirement meaningless. While it is this court's view that the no-fault divorce statute has brought immeasurable value to the citizens of this state and to its courts, if the legislature intends to lower the residency requirement to one year where the irretrievable breakdown ground is pleaded, it will have to say so. Absent this, it must be concluded that plaintiff is required to reside in New York State for two years prior to the commencement of the divorce. Because she has not, the durational residency requirement is not satisfied and this divorce action must be dismissed.