OPINION OF THE COURT Matthew F. Cooper, J. On July 24, 2011, New York became the sixth state in our nation to permit same-sex marriage. By so doing, New York joined a small group of jurisdictions extending the right to marry to all people, irrespective of sexual orientation. Four years later, the rest of the country was required to follow suit when the United States Supreme Court, in Obergefell v Hodges (576 US —, 135 S Ct 2584 [June 26, 2015]), declared same-sex marriage to be the law of the land. New York’s embracement of the equal right to marry helped to make New York City, especially Manhattan, the marriage capital of the world. The Manhattan Marriage Bureau, on Worth Street directly across from the New York County Courthouse and grandly refurbished in 2009 by famed interior decorator Jamie Drake, was already a preferred venue for couples to obtain their wedding license and have a civil ceremony conducted by an official from the Office of the City Clerk. But the advent of legalizing same-sex marriage only increased the allure of being married in New York City, the acknowledged center of the universe. On that red-letter date of July 24, 2011, 484 same-sex couples married at the five city marriage bureaus, with 293 of those ceremonies being conducted at the Manhattan Marriage Bureau. What was not lost on city officials was that almost a quarter of the couples married that day were not from New York State; they were from other states or countries, most of which did not permit same-sex marriage. This gave rise to a concerted effort by New York City, through marketing campaigns like NYC I DO, to promote New York City as a same-sex wedding destination. The results were spectacular, with then Mayor Michael Bloomberg issuing a statement in July 2012 announcing that the flood of same-sex couples traveling to New York to marry— and, in turn, spending money on hotels, restaurants and entertainment—had added more than a quarter of a billion dollars to the City’s economy. The plaintiff and the defendant are two people who accepted New York’s invitation to come here to marry. A same-sex male couple from Warsaw, Poland, they had been together since 1999, but recognized that the chances of ever being able to marry in their native country were minimal. In the face of Poland’s strongly entrenched opposition to same-sex marriage, but desirous of formalizing their relationship in the same manner available to heterosexual couples, the parties flew to New York on December 3, 2013, solely for the purpose of marrying. Three days later, on December 6, 2013, they were married by the City Clerk at the Manhattan Marriage Bureau. Immediately thereafter, they returned to Warsaw. Unfortunately, the fate of same-sex married couples is no different from that of heterosexual ones: All too often people who marry in love end up at some later point falling out of love. That is what happened to the parties here. A few years after returning home to Poland, they mutually decided that they did not want to remain married to one another. But because Poland does not recognize same-sex marriage in any form, the parties could not turn to their local courts to obtain a divorce. Consequently, they were advised by counsel, who has offices in both Warsaw and New York, that they should file for divorce in New York, the place where they entered their same-sex marriage and a jurisdiction that grants same-sex divorces. In September 2016, plaintiff commenced the New York divorce action. The complaint alleges that there are no children, no assets to divide, and no request by either spouse for spousal maintenance. The sole relief sought is the dissolution of the marriage on the grounds of the irretrievable breakdown of the relationship (Domestic Relations Law § 170 [7]). The complaint further states that both parties reside in Poland. Because the action was unopposed by defendant, plaintiff’s counsel attempted to place the action on the uncontested matrimonial calendar for the granting of the divorce. The papers, however, were rejected by the Matrimonial Clerk. The Clerk entered the following notation on the file: “Cannot file in NYS. Both parties reside in Poland. Residency requirement not met.” Following the Clerk’s rejection of the papers, plaintiff moved for an order from this court permitting the uncontested divorce to proceed despite neither party ever having resided in New York State. The motion papers were later augmented with affidavits from both plaintiff and defendant describing how they traveled to New York City specifically to avail themselves of this state’s right to marry, a right not afforded to them by their own country. They also set forth their need to avail themselves of New York’s no-fault divorce law so that they can dissolve a marriage that neither party wishes to continue. They stress that if New York refuses to entertain the proceeding, they will face the prospect of being unable to find any forum in which they can be divorced. In rejecting the uncontested divorce papers, the Matrimonial Clerk was guided by the dictates of Domestic Relations Law § 230, which, in its five subdivisions, sets forth how long an individual must reside in New York before being able to maintain an action for divorce in our courts. The durations vary depending on the extent of the connection between New York and the parties, the marriage, and the cause of action for divorce. Because the marriage in this case took place in New York, the statutorily prescribed residency duration, as set forth in Domestic Relations Law § 230 (1), is one year prior to the commencement of the action. This is a requirement that plaintiff cannot meet since neither he nor defendant has ever lived in New York. There are good reasons to allow this uncontested divorce action to proceed irrespective of the parties’ inability to meet the one-year residency requirement. Plaintiff, joined by defendant, makes a compelling argument that, under the circumstances presented here, a strict application of Domestic Relations Law § 230 is inequitable and discriminatory. Having accepted New York’s invitation to come and exercise their right to marry as a same-sex couple, the parties now find that they are being deprived of the equally fundamental right to end the marriage. Thus, they face the unhappy prospect of forever being stuck in their made-in-New York marriage, unable to dissolve it here or in their home country. Clearly, equity demands that the parties be spared such an excruciating fate (see Dickerson v Thompson, 88 AD3d 121, 124 [3d Dept 2011] [reversing trial court’s dismissal of action to dissolve Vermont same-sex civil union and noting “absent Supreme Court’s invocation of its equitable power to dissolve the civil union, there would be no court competent to provide plaintiff the requested relief and she would therefore be left without a remedy”]). The case for allowing the divorce to go forward is made that much stronger when we look at the purpose of the residency requirements. Prior to the enactment of the Divorce Reform Act of 1966, a divorce was available in New York only on the ground of adultery. As part of the Act, the law was “liberalized” to include additional grounds. Fearful that the courts of this state would become the nation’s “divorce mills” (Lacks v Lacks, 41 NY2d 71, 74 [1976], rearg denied 41 NY2d 862 [1977]), the legislature simultaneously enacted Domestic Relations Law § 230 “to preclude the use of our courts in matrimonial proceedings by spouses with no real ties to New York, who would flock here for the sole purpose of obtaining matrimonial relief unavailable in States that had substantial interests in the marital relationship” (Unanue v Unanue, 141 AD2d 31, 41 [2d Dept 1988]; see also Stancil v Stancil, 47 Misc 3d 873, 875 [Sup Ct, NY County 2015]). The feared “flocking” to New York State by litigants from other states never occurred. Ironically, this seems to have had little to do with the residency restrictions imposed by Domestic Relations Law § 230. Instead, it is attributable mainly to the fact that New York’s divorce laws, which may have appeared “liberalized” in 1966 when the grounds for divorce were expanded beyond adultery, began appearing reactionary as the years passed and New York became the last state in the nation to adopt no-fault divorce. Thus, until 2010, when New York finally enacted a no-fault divorce ground, New Yorkers who wished to be divorced would more likely seek a divorce in another state rather than residents of other states seeking to be divorced here. Now, with no-fault divorce available in every state, there is little, if any, reason for spouses to seek to dissolve their marriage outside of their home state. It is difficult to see how permitting plaintiff and defendant to pursue their uncontested divorce here would somehow open the floodgates to our courts. After all, they stand in the relatively unique—and unenviable—position of having nowhere else to turn to have their marriage dissolved. Unlike same-sex couples from other states, the parties, as residents of Poland, cannot bring an action for divorce where they live. And, because the divorce does not involve children, property, or finances— matters that are certainly best addressed by the state or country where the litigants reside—the only issue before the court is the existence of the marital relationship itself. If any jurisdiction has a substantial interest in the marital relationship it is New York, the state that married the parties and has been in the vanguard of promoting marriage equality for same-sex couples. The same cannot be said for Poland, a country that refuses to recognize the relationship simply because the spouses are husband and husband rather than husband and wife. Basic fairness and social justice, along with the lack of any adverse impact on this state and its court system, all appear to be sufficient reasons to allow plaintiff to maintain this action for an uncontested divorce. There is, however, a simpler and more established basis on which to grant the relief that plaintiff seeks on behalf of himself and the defendant. It has long been held that the residency requirements found under the five subdivisions of Domestic Relations Law § 230 are elements of a cause of action for divorce and not a jurisdictional requisite. As the Court of Appeals stated in Lacks, “[t]he requirements of section 230 ... go only to the substance of the divorce cause of action, not to the competence of the court to adjudicate the cause” (41 NY2d at 73). Expanding on the Court of Appeals’ pronouncement, the Appellate Division, First Department, held in Unanue that the “durational residency requirements are not a limitation upon the subject matter jurisdiction of the Supreme Court, but are merely ‘substantive elements’ of the matrimonial cause of action” (141 AD2d at 34). Inasmuch as this court has subject matter jurisdiction over this divorce, it would be incumbent on defendant to raise the lack of residency as an affirmative defense to the action (see Casey v Casey, 39 AD3d 579, 580 [2d Dept 2007] [holding that the Supreme Court did not lack jurisdiction over the action because the plaintiff failed to meet the residency requirements mandated by Domestic Relations Law § 230, and further, defendant waived the defense by failing to raise it and by actively participating in the litigation of the action]). Here, the defendant does not raise an affirmative defense, but, conversely, has joined in the request that the divorce be granted irrespective of the residency requirement. In light of the foregoing, plaintiff’s motion is granted.